## MALLEY ET AL. *v.* BRIGGS ET AL.

No. 84–1586.   Argued November 13, 1985—Decided March 5, 1986

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, MARSHALL, BLACKMUN, STEVENS, and O'CONNOR, JJ., joined. POWELL, J., filed an opinion concurring in part and dissenting in part, in which REHNQUIST, J., joined, *post*, p. 346.

*Ann M. Sheadel*, Assistant Attorney General of Rhode Island, argued the cause for petitioners. With her on the brief was *Arlene Violet*, Attorney General.

*Leonard Decof*, argued the cause for respondents. With him on the brief was *John S. Foley.**

---

*Briefs of *amici curiae* urging reversal were filed for the State of Minnesota et al. by *Hubert H. Humphrey III*, Attorney General of Minnesota, and *Catharine F. Haukedahl*, Special Assistant Attorney General, *Charles A. Graddick*, Attorney General of Alabama, *Robert K. Corbin*, Attorney General of Arizona, *John K. Van de Kamp*, Attorney General of California, *Jim Smith*, Attorney General of Florida, *Michael J. Bowers*, Attorney General of Georgia, *Corinne Watanabe*, Acting Attorney General of Hawaii, *Jim Jones*, Attorney General of Idaho, *Linley E. Pearson*, Attorney General of Indiana, *Robert T. Stephan*, Attorney General of Kansas, *William J. Guste, Jr.*, Attorney General of Louisiana, *Frank J. Kelley*, Attorney General of Michigan, *Edwin Lloyd Pittman*, Attorney General of Mississippi, *William L. Webster*, Attorney General of Missouri, *Mike Greely*, Attorney General of Montana, *Robert M. Spire*, Attorney General of Nebraska, *Brian McKay*, Attorney General of Nevada, *Stephen E. Merrill*, Attorney General of New Hampshire, *Irwin I. Kimmelman*, Attorney General of New Jersey, *Lacy H. Thornburg*, Attorney General of North Carolina, *Anthony J. Celebrezze, Jr.*, Attorney General of Ohio, *David*

JUSTICE WHITE delivered the opinion of the Court.

This case presents the question of the degree of immunity accorded a defendant police officer in a damages action under 42 U. S. C. § 1983 when it is alleged that the officer caused the plaintiffs to be unconstitutionally arrested by presenting a judge with a complaint and a supporting affidavit which failed to establish probable cause.

## I

In December 1980, the Rhode Island State Police were conducting a court-authorized wiretap on the telephone of one Paul Driscoll, an acquaintance of respondents' daughter. On December 20, the police intercepted a call to Driscoll from an unknown individual who identified himself as "Dr. Shogun." The police logsheet summarizes the call as follows: "General conversation re. a party they went to last night . . . caller says I can't believe I was token [sic] in front of Jimmy Briggs—caller states he passed it to Louisa . . . Paul says Nancy was sitting in his lap rolling her thing." App. 78.

Petitioner Edward Malley (hereafter petitioner) was the Rhode Island state trooper in charge of the investigation of Driscoll. After reviewing the logsheet for December 20, petitioner decided that the call from "Dr. Shogun" was incriminating, because in drug parlance "toking" means smoking marihuana and "rolling her thing" refers to rolling a mari-

Frohnmayer, Attorney General of Oregon, LeRoy S. Zimmerman, Attorney General of Pennsylvania, T. Travis Medlock, Attorney General of South Carolina, W. J. Michael Cody, Attorney General of Tennessee, David L. Wilkinson, Attorney General of Utah, William G. Broaddus, Attorney General of Virginia, Bronson C. La Follette, Attorney General of Wisconsin, and A. G. McClintock, Attorney General of Wyoming; and for Americans for Effective Law Enforcement, Inc., et al. by David Crump, Daniel B. Hales, Fred E. Inbau, Wayne W. Schmidt, and James P. Manak.

Steven P. Lockman, Jack D. Novik, Burt Neuborne, and Lynette Labinger filed a brief for the American Civil Liberties Union et al. as amici curiae.

huana cigarette. Petitioner also concluded that another call monitored the same day showed that the party discussed by Driscoll and "Dr. Shogun" took place at respondents' house. On the basis of these two calls, petitioner drew up felony complaints charging that respondents and Paul Driscoll "did unlawfully conspire to violate the uniform controlled substance act of the State of Rhode Island by having [marihuana] in their possession . . . ." *Id.*, at 74. These complaints were presented to a State District Court Judge in February 1981, after the wiretap of Driscoll's phone had been terminated. Accompanying the complaints were unsigned warrants for each respondent's arrest, and supporting affidavits describing the two intercepted calls and petitioner's interpretation of them. The judge signed warrants for the arrest of respondents and 20 other individuals charged by petitioner as a result of information gathered through the wiretap.

Respondents were arrested at their home shortly before six o'clock on the morning of March 19, 1981. They were taken to a police station, booked, held for several hours, arraigned, and released. Local and statewide newspapers published the fact that respondents, who are prominent members of their community, had been arrested and charged with drug possession. The charges against repondents were subsequently dropped when the grand jury to which the case was presented did not return an indictment.

Respondents brought an action under 42 U. S. C. § 1983 in the United States District Court for the District of Rhode Island charging, *inter alia*, that petitioner, in applying for warrants for their arrest, violated their rights under the Fourth and Fourteenth Amendments. The case was tried to a jury, and at the close of respondents' evidence, petitioner moved for and was granted a directed verdict.[1] The District

---

[1] Respondents' complaint also named the State of Rhode Island as a defendant. At the close of respondents' evidence, Rhode Island moved for and was granted a directed verdict on Eleventh Amendment grounds. Re-

Court's primary justification for directing a verdict was that the act of the judge in issuing the arrest warrants for respondents broke the causal chain between petitioner's filing of a complaint and respondents' arrest. The court also stated that an officer who believes that the facts stated in his affidavit are true and who submits them to a neutral magistrate may thereby be entitled to immunity under the "objective reasonableness" standard of *Harlow* v. *Fitzgerald*, 457 U. S. 800 (1982).

The United States Court of Appeals for the First Circuit reversed, holding that an officer who seeks an arrest warrant by submitting a complaint and supporting affidavit to a judge is not entitled to immunity unless the officer has an objectively reasonable basis for believing that the facts alleged in his affidavit are sufficient to establish probable cause. 748 F. 2d 715 (1984). We granted certiorari in order to review the First Circuit's application of the "objective reasonableness" standard in this context. 471 U. S. 1124 (1985). We affirm.

## II

Petitioner urges reversal on two grounds: first, that in this context, he is absolutely immune from liability for damages; second, that he is at least entitled to qualified immunity in this case. We reject both propositions and address first the absolute immunity issue.

## A

Our general approach to questions of immunity under § 1983 is by now well established. Although the statute on its face admits of no immunities, we have read it "in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler* v. *Pachtman*, 424 U. S. 409, 418 (1976). Our initial inquiry is whether an official claiming immunity under § 1983 can point to a

---

spondents have not contested the propriety of the directed verdict for the State.

common-law counterpart to the privilege he asserts. *Tower* v. *Glover*, 467 U. S. 914 (1984). If "an official was accorded immunity from tort actions at common law when the Civil Rights Act was enacted in 1871, the Court next considers whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions." *Id.*, at 920. Thus, while we look to the common law for guidance, we do not assume that Congress intended to incorporate every common-law immunity into § 1983 in unaltered form.

Our cases also make plain that "[f]or executive officers in general, . . . qualified immunity represents the norm." *Harlow, supra*, at 807.[2] Like federal officers, state officers who "seek absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope." *Butz* v. *Economou*, 438 U. S. 478, 506 (1978).

## B

Although we have previously held that police officers sued under § 1983 for false arrest are qualifiedly immune, *Pierson* v. *Ray*, 386 U. S. 547, 557 (1967), petitioner urges that he should be absolutely immune because his function in seeking an arrest warrant was similar to that of a complaining witness. The difficulty with this submission is that complaining witnesses were not absolutely immune at common law. In 1871, the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and

---

[2] *Harlow* was a suit against federal, not state, officials, but as we stated in deciding the case, it is " 'untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials.' " 457 U. S., at 818, n. 30 (quoting *Butz* v. *Economou*, 438 U. S. 478, 504 (1978)).

without probable cause.[3]   Given malice and the lack of probable cause, the complainant enjoyed no immunity.   The common law thus affords no support for petitioner.

Nor are we moved by petitioner's argument that policy considerations require absolute immunity for the officer applying for a warrant.   As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law.   At common law, in cases where probable cause to arrest was lacking, a complaining witness' immunity turned on the issue of malice, which was a jury question.[4]   Under the *Harlow* standard, on the other hand, an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner.   The *Harlow* standard is specifically designed to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment," and we believe it sufficiently serves this goal.   Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

## C

As an alternative ground for claiming absolute immunity, petitioner draws an analogy between an officer requesting a warrant and a prosecutor who asks a grand jury to indict a suspect.   Like the prosecutor, petitioner argues, the officer must exercise a discretionary judgment based on the evi-

---

[3] See, *e. g.*, *Dinsman* v. *Wilkes*, 12 How. 390, 402 (1852); *Randall* v. *Henry*, 5 Stew. & P. 367, 378 (Ala. 1834); *Bell* v. *Keepers*, 37 Kan. 64, 14 P. 542 (1887); *Finn* v. *Frink*, 84 Me. 261, 24 A. 851 (1892); 4 W. Wait, Actions and Defenses 352–356 (1878).   The same rule applied in the case of search warrants.   See, *e. g.*, *Barker* v. *Stetson*, 73 Mass. 53, 54 (1856); *Carey* v. *Sheets*, 67 Ind. 375, 378–379 (1879).

[4] See 4 Wait, *supra*, at 345 ("Whether malice is proved or not is a question of fact for the jury").

dence before him, and like the prosecutor, the officer may not exercise his best judgment if the threat of retaliatory lawsuits hangs over him. Thus, petitioner urges us to read § 1983 as giving the officer the same absolute immunity enjoyed by the prosecutor. Cf. *Imbler* v. *Pachtman*, 424 U. S. 409 (1976).

We reemphasize that our role is to interpret the intent of Congress in enacting § 1983, not to make a freewheeling policy choice, and that we are guided in interpreting Congress' intent by the common-law tradition. In *Imbler, supra,* we concluded that at common law "[t]he general rule was, and is, that a prosecutor is absolutely immune from suit for malicious prosecution." *Id.,* at 437. We do not find a comparable tradition of absolute immunity for one whose complaint causes a warrant to issue. See n. 3, *supra.* While this observation may seem unresponsive to petitioner's policy argument, it is, we believe, an important guide to interpreting § 1983. Since the statute on its face does not provide for *any* immunities, we would be going far to read into it an absolute immunity for conduct which was only accorded qualified immunity in 1871.

Even were we to overlook the fact that petitioner is inviting us to expand what was a qualified immunity at common law into an absolute immunity, we would find his analogy between himself and a prosecutor untenable. We have interpreted § 1983 to give absolute immunity to functions "intimately associated with the *judicial* phase of the criminal process," *Imbler, supra,* at 430 (emphasis added), not from an exaggerated esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself. *Briscoe* v. *LaHue,* 460 U. S. 325, 334–335 (1983). We intend no disrespect to the officer applying for a warrant by observing that his action, while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than

the act of a prosecutor in seeking an indictment. Furthermore, petitioner's analogy, while it has some force, does not take account of the fact that the prosecutor's act in seeking an indictment is but the first step in the process of seeking a conviction. Exposing the prosecutor to liability for the initial phase of his prosecutorial work could interfere with his exercise of independent judgment at every phase of his work, since the prosecutor might come to see later decisions in terms of their effect on his potential liability. Thus, we shield the prosecutor seeking an indictment because any lesser immunity could impair the performance of a central actor in the judicial process.[5]

In the case of the officer applying for a warrant, it is our judgment that the judicial process will on the whole benefit from a rule of qualified rather than absolute immunity. We do not believe that the *Harlow* standard, which gives ample room for mistaken judgments, will frequently deter an officer from submitting an affidavit when probable cause to make an arrest is present. True, an officer who knows that objectively unreasonable decisions will be actionable may be motivated to reflect, before submitting a request for a warrant, upon whether he has a reasonable basis for believing that his affidavit establishes probable cause. But such reflection is desirable, because it reduces the likelihood that the officer's request for a warrant will be premature. Premature requests for warrants are at best a waste of judicial resources; at worst, they lead to premature arrests, which may injure the

---

[5] The organized bar's development and enforcement of professional standards for prosecutors also lessen the danger that absolute immunity will become a shield for prosecutorial misconduct. As we observed in *Imbler*, "a prosecutor stands perhaps unique, among officials whose acts could deprive persons of constitutional rights, in his amenability to professional discipline by an association of his peers." 424 U. S., at 429 (footnote omitted). The absence of a comparably well-developed and pervasive mechanism for controlling police misconduct weighs against allowing absolute immunity for the officer.

innocent or, by giving the basis for a suppression motion, benefit the guilty.

Furthermore, it would be incongruous to test police behavior by the "objective reasonableness" standard in a suppression hearing, see *United States* v. *Leon*, 468 U. S. 897 (1984), while exempting police conduct in applying for an arrest or search warrant from any scrutiny whatsoever in a § 1983 damages action.[6] While we believe the exclusionary rule serves a necessary purpose, it obviously does so at a considerable cost to society as a whole, because it excludes evidence probative of guilt. On the other hand, a damages remedy for an arrest following an objectively unreasonable request for a warrant imposes a cost directly on the officer responsible for the unreasonable request, without the side effect of hampering a criminal prosecution. Also, in the case of the § 1983 action, the likelihood is obviously greater than at the suppression hearing that the remedy is benefiting the victim of police misconduct one would think most deserving of a remedy—the person who in fact has done no wrong, and has been arrested for no reason, or a bad reason. See *Owen* v. *City of Independence*, 445 U. S. 622, 653 (1980).

Accordingly, we hold that the same standard of objective reasonableness that we applied in the context of a suppression hearing in *Leon, supra,* defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest.[7] Only where the warrant

---

[6] Although the case before us only concerns a damages action for an officer's part in obtaining an allegedly unconstitutional arrest warrant, the distinction between a search warrant and an arrest warrant would not make a difference in the degree of immunity accorded the officer who applied for the warrant.

[7] Petitioner has not pressed the argument that in a case like this the officer should not be liable because the judge's decision to issue the warrant breaks the causal chain between the application for the warrant and the improvident arrest. It should be clear, however, that the District Court's "no causation" rationale in this case is inconsistent with our interpretation of § 1983. As we stated in *Monroe* v. *Pape*, 365 U. S. 167, 187 (1961),

application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, *Leon, supra,* at 923, will the shield of immunity be lost.

## III

We also reject petitioner's argument that if an officer is entitled to only qualified immunity in cases like this, he is nevertheless shielded from damages liability because the act of applying for a warrant is *per se* objectively reasonable, provided that the officer believes that the facts alleged in his affidavit are true. Petitioner insists that he is entitled to rely on the judgment of a judicial officer in finding that probable cause exists and hence issuing the warrant. This view of objective reasonableness is at odds with our development of that concept in *Harlow* and *Leon*. In *Leon,* we stated that "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." 468 U. S., at 922, n. 23. The analogous question in this case is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.[8] If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest. It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under

§ 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Since the common law recognized the causal link between the submission of a complaint and an ensuing arrest, we read § 1983 as recognizing the same causal link.

[8] The question is not presented to us, nor do we decide, whether petitioner's conduct in this case was in fact objectively reasonable. That issue must be resolved on remand.

docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment.[9]

The judgment of the Court of Appeals is affirmed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE POWELL, with whom JUSTICE REHNQUIST joins, concurring in part and dissenting in part.

Although I agree with much of the Court's opinion, I write separately to emphasize that substantial weight should be accorded the judge's finding of probable cause in determining whether petitioner state trooper (hereafter petitioner) will be personally liable for damages under § 1983. I also believe that summary judgment would have been appropriate here because respondents failed to show that petitioner's decision to request a warrant was not objectively reasonable.

I

At the outset, I supplement the facts stated by the Court. Petitioner was supervising a wiretap in a narcotics investigation pursuant to an order by the Rhode Island Superior

---

[9] Notwithstanding petitioner's protestations, the rule we adopt in no way "requires the police officer to assume a role even more skilled . . . than the magistrate." Brief for Petitioners 33. It is a sound presumption that "the magistrate is more qualified than the police officer to make a probable cause determination," *ibid.*, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable. But it is different if no officer of reasonable competence would have requested the warrant, *i. e.*, his request is outside the range of the professional competence expected of an officer. If the magistrate issues the warrant in such a case, his action is not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty. The officer then cannot excuse his own default by pointing to the greater incompetence of the magistrate.

Court. It appears from a logged conversation recorded on the wiretap that a "Jimmy Briggs" and a "Luisa *[sic]* Briggs" attended a party where some of those present possessed and used marihuana. A marihuana cigarette may have been passed to Mrs. Briggs. The conversation also referred to a party that was going to be held at respondents' home and attended by some of these people. A fair inference from the log is that respondents were hosting a marihuana party similar to the earlier one.

On the basis of this conversation, petitioner and his partner decided to seek warrants against respondents for possessing marihuana.[1] Petitioner presented the affidavits to Judge Capelli, a Rhode Island District Judge.[2] Judge Capelli reviewed the affidavits, and entered an order stating:

---

[1] The State Police successfully sought 20 additional arrest warrants in connection with the narcotics investigation. The record before this Court does not disclose how many of these warrants resulted in indictments.

[2] Trooper Malley's attachment to the affidavit seeking a warrant for the arrest of James R. Briggs stated:

"Your affiant upon oath states that he has reason to believe and does believe that grounds for issuance of an arrest warrant exists *[sic]* and states the following facts on which such belief is founded:

"Persuant *[sic]* to a court ordered wire intercept . . . .

"On December 20, 1980, at 5:30 p.m. an incoming call was received to Paul Driscoll recorded on Reel 7, Side 1, Footage 30–48. This unidentified male calls Paul Driscoll and states, 'This is Doctor Shotgun' *[sic]*. General conversation reference to a party they went to last night. Caller states, 'I can't believe I was token in front of Jimmy Briggs.' Caller states that he passed it to Luisa *[sic]*. Caller and Paul talk about another party going on tonight. Paul says that Nancy was sitting in his lap rolling her thing.

"On the same date at 5:56 p.m., Reel 7, Footage 48–59. Male subject Scott calls Paul Driscoll. General conversation about a party at Jaime's parents' [respondents'] home. Also, that they went there last night. They are referring to Jaime's parents' home, that is James and Luisa Briggs. Further, in regard to the conversation at 5:30 p.m. this unidentified male who called himself Doctor Shotgun *[sic]* stated that he was token in front of Jimmy Briggs. In your affiant's experience, he was smoking a marijuana cigarette in front of James Briggs. He then states that he passed it to Luisa. Luisa would be Luisa Briggs. He passed her a mari-

### "TO ANY AUTHORIZED OFFICER:

"Affidavit (and complaint) having been made to me under oath, and as I am satisfied that there is probable cause for the belief therein set forth that grounds for issuing an arrest warrant exists *[sic]*, you are hereby commanded to arrest the defendant forthwith and to bring him before a judge of this court without unnecessary delay."

The record before us does not disclose any evidence or claim that Judge Capelli failed to act in a competent judicial manner, or that he failed to exercise independent judgment in determining whether the arrest warrant should issue.

Respondents were prominent citizens in the community, and had never previously been implicated in any violation of the criminal laws. The grand jury did not return an indictment against them, and they instituted this suit under § 1983, seeking to hold petitioner personally liable for damages.[3] The District Court directed a verdict for petitioner. It held that Judge Capelli's finding of probable cause and his issuance of the arrest warrants immunized petitioner from respondents' claim for damages.

The Court of Appeals for the First Circuit reversed, holding that liability under § 1983 will attach when "an officer is 'constitutionally negligent,' that is, where the officer should have known that the facts recited in the affidavit did not constitute probable cause." 748 F. 2d 715, 721 (1984). The Court of Appeals also denied petitioner's claim of immunity, purporting to apply the standard of objective reasonableness for qualified immunity articulated in *Harlow* v. *Fitzgerald*, 457 U. S. 800 (1982). This Court today affirms.

---

juana cigarette. Where Paul states that Nancy was sitting on his lap rolling her thing, she was rolling a marijuana cigarette." App. 72–73.

The statement attached to the affidavit seeking a warrant for the arrest of Louisa Briggs was identical.

[3] Respondents each sought $1 million in compensatory damages and $1 million in punitive damages.

## II

I agree with the Court's decision that petitioner was not entitled to absolute immunity, and that the *Harlow* standard of qualified immunity—objective reasonableness—properly applies. In *Harlow*, however, the Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*, at 818. Putting it differently, we also stated that a claim for qualified immunity "would be defeated [only] if an official *knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].'" *Id.*, at 815, quoting *Wood* v. *Strickland*, 420 U. S. 308, 322 (1975).

At one point in the Court's opinion today, it correctly recognizes that as the "qualified immunity defense has evolved, it provides ample protection to all but the *plainly incompetent or those who knowingly violate the law.*" *Ante*, at 341 (emphasis added). The Court also says that liability will attach "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Ibid.*

I agree with the foregoing characterizations of the applicable standard when an official raises the defense of qualified immunity. I disagree, however, with the Court in two major respects. First, rather than deciding whether petitioner's conduct met the foregoing standard, the Court remands for trial on this issue. Yet, as the Court recognizes, unless "no reasonably competent officer would have concluded that a warrant should issue," *ibid.*, petitioner should

be immune from damages. *Ibid.* In my view, in the light of the logs of the duly authorized wiretap, a reasonably competent officer could have believed that a warrant should issue.

It is undisputed that wiretaps initiated as part of a drug investigation revealed that respondents had attended a party where marihuana was being smoked, that a marihuana cigarette may have been passed to Mrs. Briggs,[4] and that another party—at least inferentially of a similar type—was to be held in respondents' home. Under the *Harlow* standard, we need not consider whether this information would be viewed by *every* reasonable officer as sufficient evidence of probable cause for the issuance of a warrant. Police often operate "in the midst and haste of a criminal investigation," *United States* v. *Ventresca,* 380 U. S. 102, 108 (1965), and they have to make judgment calls over which reasonable officers could differ. In this case, the logs from the wiretap at least arguably implicated respondents in unlawful activities. See *supra,* at 347, and n. 1. Under these circumstances, an officer of reasonable competence could have believed that the wiretap provided probable cause to arrest respondents.

Second, and perhaps of greater importance, in determining whether the police officer acted with objective reasonableness, the Court apparently would give little evidentiary weight to the finding of probable cause by a magistrate or judicial officer.[5] The Court quotes from *United States* v.

---

[4] Although the affidavit from Trooper Malley stated that a marihuana cigarette was passed to Mrs. Briggs, the call log simply states that the caller "passed it to Louisa." *Id.,* at 78. A subsequent call to Driscoll mentioned a "Louisa (Bungershort)," probably in connection with the same party. *Ibid.* It is possible that the marihuana cigarette was passed to Louisa Bungershort rather than Louisa Briggs. At trial, Mrs. Briggs denied seeing any marihuana at that party or receiving a marihuana cigarette. *Id.,* at 40.

[5] The words "magistrate" and "judicial officer" often are used interchangeably in Court opinions. *Shadwick* v. *City of Tampa,* 407 U. S. 345 (1972). The Court's emphasis on magistrates has "been directed at the

*Leon,* 468 U. S. 897, 922, n. 23 (1984), that "'our good-faith inquiry is *confined* to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Ante,* at 345 (emphasis added). Although this quotation does not foreclose some consideration by the District Court of the judge's judicial decision, the Court seems to denigrate the relevance of the judge's determination of probable cause and his role in the issuance of a warrant.[6] In my view, the Court misconstrues the respective roles of, and the relationship between, the police officer and the magistrate or judicial officer. In cases where a criminal defendant has asserted claims of unconstitutional search and seizure, this Court has consistently accorded primary evidentiary weight to a magistrate's determination of probable cause.[7] No rea-

---

need for independent, neutral, and detached judgment, not at legal training." *North* v. *Russell,* 427 U. S. 328, 337 (1976).

[6] The Court observes that "ours is not an ideal system," and states that "it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should." *Ante,* at 345–346. While I do not question the possibility that some magistrates in some cases may "fail to perform as a magistrate should," no one suggests that such is the case here.

The Court previously has stated that "[i]f a magistrate serves merely as a 'rubber stamp' for the police or is unable to exercise mature judgment, closer supervision or removal provides a more effective remedy than the exclusionary rule." *United States* v. *Leon,* 468 U. S., at 917–918, n. 18. I also believe that closer supervision or removal provides a more effective remedy than personal liability for police officers.

[7] In *United States* v. *Ventresca,* 380 U. S. 102, 105–106 (1965), the Court stated:

"We begin our analysis of [the Fourth Amendment] mindful of the fact that in this case a search was made pursuant to a search warrant. . . .

   .       .       .       .       .

"In *Jones* v. *United States,* 362 U. S. 257, 270, this Court, strongly supporting the preference to be accorded searches under a warrant, indicated that in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall. In *Johnson* v. *United States,* 333 U. S. 10, and *Chapman* v. *United States,* 365 U. S. 610, the Court, in condemning searches by officers who invaded premises without a warrant,

son has been articulated by the Court, and certainly none occurs to me, why less weight should be accorded the magistrate's decision in a § 1983 damages suit against the police officer who applied for the warrant.

Our common law has long recognized a "reasonable division of functions," *Baker* v. *McCollan,* 443 U. S. 137, 145 (1979), in law enforcement: the gathering of information is the province of the police, and the weighing and judging of that information is virtually the exclusive province of the magistrate. As Lord Mansfield stated two centuries ago: "It is not fit that the receiving or judging of the information should be left to the discretion of the officer. The magistrate ought to judge; and should give certain directions to the officer." *Leach* v. *Three of the King's Messengers,* 19 How. St. Tr. 1001, 1027 (1765), quoted in *United States* v. *United States District Court,* 407 U. S. 297, 316 (1972).

We have affirmed that the arrest warrant "should represent both the efforts of the officer to gather evidence of wrongful acts and the judgment of the magistrate that the collected evidence is sufficient to justify [issuance of a warrant]." *United States* v. *United States District Court, supra,* at 316. This Court also has recognized that "the informed and deliberate determinations of magistrates . . . are to be preferred over the hurried actions of officers." *United States* v. *Lefkowitz,* 285 U. S. 452, 464 (1932). Judicial evaluation of probable cause by a magistrate is the essential "checkpoint between the Government and the citizen." *Steagald* v. *United States,*

---

plainly intimated that had the proper course of obtaining a warrant from a magistrate been followed and had the magistrate on the same evidence available to the police made a finding of probable cause, the search under the warrant would have been sustained."

Generally, the judicial officer's determination of probable cause has greater reliability than a police officer's, not only because the judicial officer is not immersed in the criminal investigation, but also because the judicial officer usually has greater time for deliberation and greater familiarity through training or education with the legal concepts concerning probable cause.

451 U. S. 204, 212 (1981). As we stated in *Arkansas* v. *Sanders*, 442 U. S. 753, 759 (1979):

> "The prominent place the warrant requirement is given in our decisions reflects the 'basic constitutional doctrine that individual freedoms will best be preserved through a separation of powers and division of functions among the different branches and levels of Government.' *United States* v. *United States District Court, supra,* at 317. By requiring that conclusions concerning probable cause and the scope of a search 'be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime,' *Johnson* v. *United States,* 333 U. S. 10, 14 (1948), we minimize the risk of unreasonable assertions of executive authority."[8]

The police, where they have reason to believe probable cause exists, should be encouraged to submit affidavits to judicial officers.[9] I therefore believe that in a suit such as this, the Court should expressly hold that the decision by the magistrate is entitled to substantial evidentiary weight. A more restrictive standard will discourage police officers from seeking warrants out of fear of litigation and possible personal liability. The specter of personal liability for a mistake in judgment may cause a prudent police officer to close his eyes to facts that should at least be brought to the attention of the judicial officer authorized to make the decision

---

[8] There will, of course, be instances where "it is plainly evident that a magistrate or judge ha[s] no business issuing a warrant." *Illinois* v. *Gates,* 462 U. S. 213, 264 (1983) (WHITE, J., concurring in judgment). If the magistrate has wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc.* v. *New York,* 442 U. S. 319 (1979), then the magistrate's approval of a warrant would not necessarily be probative of whether an officer's request for a warrant was objectively reasonable.

[9] It is of course true that actions by police must comport with the Constitution. Police departments and prosecutors have an obligation to instill this understanding in officers, and to discipline those found to have violated the Constitution.

whether a warrant should issue. Law enforcement is ill-served by this *in terrorem* restraint.

## III

This Court has long sought to divide the functions of law enforcement to impose on the magistrate the primary responsibility for determining whether a warrant will issue. It is inconsistent with this jurisprudence to imply or hold that the magistrate's determination of probable cause is irrelevant in this suit. A judicial officer's "judgment call" in determining probable cause, although not conclusive, is entitled to substantial evidentiary weight in suits seeking to impose personal liability on the police officer. In this case, in the light of the judge's determination and the evidence of illegal activity, I would hold that petitioner is immune from damages.

I agree with the judgment declining to accord absolute immunity to the officer seeking a warrant, but I do not join the Court's opinion, and I dissent from the decision to remand this case for trial on the immunity issue.