869 F.2d 593
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
William Scott HICKS, Plaintiff-Appellee,
v.
Oscar W. BUTLER, Jr., Defendant-Appellant.
 No. 88-3075.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 9, 1988.
Decided: Feb. 14, 1989.
 
 E.D.Va.
 REVERSED AND REMANDED.
 
 
 1
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, District Judge. (CA 87-1097)
 
 
 2
 Susan Bosma Potter, Assistant County Attorney (David T. Stitt, County Attorney, on brief), for appellant.
 
 
 3
 Richard Farr MacDowell, Jr. (MacDowell & Manson, P.C., on brief), for appellee.
 
 
 4
 Before WILKINSON, Circuit Judge, and ROBERT R. MERHIGE, Jr., Senior United States District Judge for the Eastern District of Virginia, and MALCOLM J. HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 
 PER CURIAM
 
 5
 Appellant, Oscar W. Butler, an investigator with the Criminal Investigations Bureau of the Fairfax County Police Department, appeals the district court's denial of his motion for summary judgment in a suit brought against him by William Scott Hicks under 42 U.S.C. Sec. 1983. Hicks seeks damages in connection with his arrest and detention on October 30, 1985. After completion of discovery, Butler moved for summary judgment on the ground, inter alia, that he was protected by qualified immunity from civil suit. The district court denied the motion, stating that resolution of the issue of qualified immunity must await determination at trial of whether, as a factual matter, probable cause existed for Hicks' arrest. Thereupon Butler noted appeal, and on April 28, 1988, this Court stayed further proceedings in the district court pending his appeal.
 
 
 6
 For the reasons that follow, we reverse and remand for entry of summary judgment in favor of the appellant.
 
 
 7
 In the early morning hours of July 10, 1985, a taxicab driven by Michael D. Fontaine was stolen by one of two male passengers Fontaine had picked up at a restaurant known as Muggs. The uncontradicted facts disclose that the men, who appeared intoxicated, changed their requested destination several times and, during the ride, whispered to each other, leaving Fontaine with the impression that they intended to rob him. Near their final requested destination, the men, upon being asked for the fare, jumped from the cab and ran. After a short chase, the driver apprehended one of the men and the other got back into the cab and drove away. The taxicab was later found to have been abandoned and deliberately set afire.
 
 
 8
 Butler, having been assigned to investigate the case on July 11, 1985, interviewed Booth, the passenger apprehended by the taxicab driver. While denying knowledge of the identity of his fellow passenger of the previous night, he gave Butler a description of the missing suspect as well as other information. Butler's investigation revealed that Booth and a man whom Booth said he had visited prior to getting into the cab at the restaurant had criminal records and had been involved in past offenses together.
 
 
 9
 In October, 1985, Fontaine told Butler that a man named William Hicks had stolen the cab, and that he had gotten Hicks' name from a former girlfriend of Booth's, Clare Priestley. On questioning, Priestley informed Butler that Booth had pointed out to her the man with him in the cab and that she later learned the man's name was Hicks. Butler's research further revealed that Hicks fit Fontaine's general description of the thief, that he was a friend of Booth's and that he had a criminal record including alcohol-related offenses, assault and a conviction for robbery in 1983.
 
 
 10
 Butler's investigation, which included a statement from Pamela Louise Burton, Hicks' former girlfriend, that Hicks had admitted committing the offense, led him to the conclusion that Hicks had stolen and burned the taxicab. He also had a tentative description from the cab driver who had chosen one of six pictures as looking like the man who had stolen his cab. The picture he chose was of Hicks, though the driver stated the thief's hair had been darker, longer and more curly, and that he appeared to have been older.
 
 
 11
 On the basis of Butler's investigation, a magistrate found probable cause and Hicks was arrested. After Hicks' arrest, he falsely told Booth he had been incarcerated at the time of the charged offense and, in addition, made other contradictory statements.
 
 
 12
 A month after Hicks' arrest, Booth called Butler and said that he had heard of Hicks' arrest and that Hicks was not the man who had been with him in the cab. Booth stated that Gregory Whalen had stolen the cab and gave Butler information on how and why the cab had been burned. Butler immediately contacted the detention center that had been holding Hicks and learned that Hicks was out on bond. Butler also contacted the Commonwealth Attorney's office. At Hicks' January 8, 1986 preliminary hearing, an order of nolle prosequi was entered in his case. Whalen was charged with the same offense, but was acquitted when Booth recanted his story and testified at trial that he did not remember who had been in the taxicab with him.
 
 
 13
 Hicks filed a Sec. 1983 action against Butler on October 28, 1987, alleging wrongful detention, malicious prosecution and abuse of process. On April 5, 1988, the district court entered an order denying Butler's motion for summary judgment on the ground, inter alia, of qualified immunity. From the bench, the judge enunciated the legal standard for summary judgment under Fed.R.Civ. 56, and concluded: "All these arguments that the plaintiff raises, let me note, turn on the issue of probable cause. I think that's going to be a factual question that is to be developed during trial.... I think that at this time I'm going to go ahead and deny the motion...."
 
 
 14
 In his appeal, Butler argues that the district court's focus on the issue of probable cause was misplaced. He asserts that the district court properly should have applied the so-called "objective reasonableness" standard in determining whether Butler was entitled to qualified immunity from suit, and that had it done so, it would have found that Butler was so protected.
 
 II.
 
 15
 Appellee raises as a preliminary matter the issue of whether this Court has jurisdiction to hear Butler's appeal from the district court's interlocutory order denying the motion for summary judgment. Appellee asserts that the only matters in dispute are questions of fact, not law, and accordingly the case does not present an appropriate issue for appeal.
 
 
 16
 Appellee is in error. A district court order, rejecting an assertion of qualified immunity from civil suit under Sec. 1983, is an appealable final decision "to the extent that it turns on an issue of law." Michell v. Forsyth, 472 U.S. 511, 530 (1985); Tarantino v. Baker, 825 F.2d 772, 774 n. 1 (4th Cir.1987). In the instant case, there is no dispute as to the relevant facts, nor did the district court make any factual determinations in ruling on the motion. What we are asked to decide is whether the district court applied the correct legal standard to appellant's claim for qualified immunity. This is a question of law properly before the Court.
 
 
 17
 The law with respect to the qualified immunity of a police officer in a suit for damages under 42 U.S.C. Sec. 1983 is well-established. In Malley v. Briggs, 475 U.S. 335 (1986), the United States Supreme Court held that a standard of "objective reasonableness" would be used to test the behavior of a police officer requesting an arrest warrant, and thus to determine whether qualified immunity had been established. Specifically, a police officer is immune from suit if a reasonable officer could have believed that there was probable cause to support his or her application for an arrest warrant, in light of the legal rules clearly established at the time. See Anderson v. Creighton, --- U.S. ----, 107 S.Ct. 3034 (1987); Harlow v. Fitzgerald, 457 U.S. 800 (1982).
 
 
 18
 This "objectively ascertainable question," Malley, 475 U.S. at 345, should have been asked and answered by the district court. On the basis of the record, it appears that it was not. Instead, the district court's brief ruling from the bench focused on the question of whether, as a matter of fact, probable cause existed for the arrest. This was not the proper inquiry. Although the existence of probable cause is an issue central to the proof of the plaintiff's case, the defendant may establish that he is protected by qualified immunity regardless of whether probable cause is found to exist. See Tarantino, 825 F.2d at 774. As stated above, it is only necessary that an objectively reasonable officer could have believed that the warrant was supported by probable cause.
 
 
 19
 Applying the correct legal standard to the facts of this case, we find that there is ample evidence in the record to show that Butler's actions were objectively reasonable, and thus that he was entitled to immunity from suit. That is, given the "totality of the circumstances," Illinois v. Gates, 462 U.S. 213, 238 (1983), a reasonable police officer could have concluded that there was probable cause to arrest Hicks in connection with the theft of the taxicab.
 
 
 20
 First, Clare Priestley stated that Booth, her former boyfriend, pointed out to her the man he said was with him in the cab and that she later learned that that man was Hicks. Second, Pamela Burton, Hicks' former girlfriend, stated that Hicks told her that he and a friend had robbed a taxicab and that Hicks had later burned the cab. Third, Michael Fontaine picked Hicks' photograph out of a six picture line-up, stating that it looked like the man who had taken his cab, although his hair was different.
 
 
 21
 In addition to these three major pieces of information, Butler reasonably believed that the thief knew Booth. Butler in fact learned that Hicks knew Booth and that he frequented Muggs Restaurant. Further, Butler knew that at the time of the incident, Hicks fit Fontaine's physical description of the thief in many respects, including his hairstyle, and that he had a criminal record of alcohol-related offenses, assault and robbery.
 
 
 22
 Hicks does not deny the substance of this incriminating evidence. Instead, he challenges the weight and credibility that should reasonably have been assigned to Priestley and Burton's statements and to Fontaine's identification of him. It is clear from the record, however, that Burton and Priestley each provided independent information pointing to Hicks and that they did so without inducement or reward from the police or prosecutors in the case. Their credibility cannot be said to be so lacking that no reasonable police officer could have given weight to their testimony in assessing the "totality of the circumstances" and determining that probable cause existed to arrest Hicks. While Hicks correctly points out that Fontaine did not positively identify him, Fontaine did pick his picture out of photographic arrays on two occasions. He told Butler that Hicks looked like the man who had stolen his taxicab, but pointed out a few differences, such as the fact that the thief's hair was longer and curlier. But Butler knew, from information that he had obtained prior to Hicks' arrest that Hicks' hair was in fact longer and curlier at the time of the offense than it was when the photographs were taken.
 
 
 23
 Thus, taken as a whole, the information Butler obtained during his investigation could have caused a reasonable police officer to believe that probable cause existed to seek a warrant for Hicks' arrest. Accordingly, Butler is entitled to immunity from the pending suit.
 
 
 24
 The order of the district court is reversed, and the case is remanded with directions to grant the appellant's motion for summary judgment and to dismiss the action against him.
 
 
 25
 REVERSED AND REMANDED.