GREGORY, Circuit Judge,
dissenting:
Under clearly established law, a police officer who shoots a fleeing suspect without “probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others” violates that suspect’s Fourth Amendment rights. Tennessee v. Garner, 471 U.S. 1, 3, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). In this case, Officer Purnell shot a fleeing suspect whom he had no reason to believe was a threat to anyone. And yet the majority holds that Officer Purnell is entitled to qualified immunity because he discharged his firearm by mistake, even though the majority simultaneously admits that the district court erred in finding that the mistake was reasonable. By allowing an unreasonable mistake to serve as the basis for establishing qualified immunity and focusing its inquiry on Officer Pur-nell’s intent rather than his or the suspect’s objective behavior, the majority im-permissibly transforms the doctrine of qualified immunity into a subjective inquiry that excuses, not guides, reasonable officer conduct.
In its opinion, the majority frames the inquiry as:
whether an officer in that “specific context” would know that an act of weapon confusion of the firearm for the taser was “clearly established” as an excessive use of force under the Fourth Amendment.
Maj. Op. at 338-39. In other words, the majority ignores what a reasonable officer would have known about the situation he faced and instead paradoxically asks whether this specific officer would know that he could not unreasonably confuse his gun for his taser. This is not the correct inquiry.
Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful. Saucier v. Katz, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part, Pearson v. Callahan, — U.S.-, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Crucially, though, an officer’s subjective belief about the nature of his conduct is “irrelevant” for qualified immunity purposes. Anderson, 483 U.S. at 641, 107 S.Ct. 3034. Courts are charged with asking only whether the officer’s actual conduct, in light of the objective circumstances, was barred by clearly established law. See Saucier, 533 U.S. at 202, 121 S.Ct. 2151 (explaining that the relevant question for qualified immunity purposes is “whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted” (emphasis added)). The majority fundamentally errs, then, by focusing its inquiry on Officer Purnell’s intended conduct, rather than his actual conduct, given that it must accept that the mistaken conduct was unreasonable for Fourth Amendment purposes.
The fact that “qualified immunity is ‘an immunity from suit rather than a mere *343 defense to liability [that] is effectively lost if a case is erroneously permitted to go to trial,’ ” Pearson, 129 S.Ct. at 815 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)) (internal alterations omitted), demonstrates that unreasonable volitional or cognitive mistakes cannot be a part of the qualified immunity inquiry. The parties before us concede that Officer Purnell made a good-faith error when he deployed his gun rather than his taser. But suppose the officer’s subjective intent were in dispute, with the officer claiming that he made a mistake and the suspect alleging that he was shot intentionally. In that case, under the majority’s analysis, the district court would have to hold a trial in order to resolve the qualified immunity issue. At base the majority’s analysis cannot be the correct test because it is incapable of resolving mistaken-shooting claims “at the earliest possible stage in litigation.” Id. (quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)).
The majority is also quite wrong to claim that disregarding Officer Purnell’s objectively unreasonable mistake while conducting the qualified immunity inquiry would lead to a result contrary to that reached by the Supreme Court in Saucier or Anderson. In Saucier, the Court considered whether an officer who dragged and shoved a suspect who attempted to cross a barrier separating the public from the Vice President of the United States, violated the suspect’s clearly established rights. 533 U.S. at 208, 121 S.Ct. 2151. Given existing precedent that allowed for some degree of physical force when making an arrest and given the particularly dangerous threat the suspect may have posed, the Court held that a reasonable officer could believe that his actions were legal. Id. The Court’s inquiry focused squarely on the specific conduct of the officer and the suspect and how a reasonable person would view those actions, without any regard for what the officer thought he was doing.
Likewise, in Anderson, the Court considered a police officer’s warrantless search of the plaintiffs’ home undertaken with the mistaken belief that a suspected bank robber was present. 483 U.S. at 637, 107 S.Ct. 3034. In finding that the broad rule that warrantless home searches conducted without probable cause or exigent circumstances was insufficient to put a reasonable officer on notice that his conduct was illegal in these circumstances, the Court explained that the relevant inquiry was whether the objective circumstances could be considered exigent or could establish probable cause. Id. at 640-41, 107 S.Ct. 3034. The Court specifically emphasized, though, that the officer’s “subjective beliefs about the search are irrelevant.” Id. at 641, 107 S.Ct. 3034. Once again, the relevant analytical tool, the Court made clear, is the application of established legal principles to objective conduct, not subjective thoughts.
Applying Saucier and Anderson to this case, it is clear what the proper qualified immunity analysis should look like. Under settled law, a police officer may not shoot a fleeing suspect unless the officer has probable cause to believe that the suspect is dangerous. Garner, 471 U.S. at 11, 105 S.Ct. 1694. Therefore, Officer Purnell would only be entitled to qualified immunity if a reasonable officer could believe that Gamer was inapplicable given the suspect’s objective behavior or his own, objective conduct.* Once the court determines *344 that Officer Purnell’s mistaken use of his gun was unreasonable under the Fourth Amendment, it should ask whether a reasonable officer could believe that his actual conduct complied with Gamer given what the suspect actually did. But both Anderson and Saucier make clear that the qualified immunity inquiry does not ask what the officer subjectively and unreasonably thought his or the suspect’s conduct to have been.
The Sixth Circuit demonstrated this analysis in a mistaken-shooting case that is legally indistinguishable from this one. In Floyd v. City of Detroit, 518 F.3d 398 (6th Cir.2008), the defendant police officer claimed that he shot an unarmed suspect under the mistaken belief that the suspect had fired at a fellow officer. Id. at 408. Having determined that the officer’s mistaken belief was unreasonable, the Sixth Circuit denied him qualified immunity and refused to apply a second level of deference to that mistake. Id. As the court noted when applying Saucier:
the failure of both officers to properly assess the reality of the situation they created before employing deadly force without warning against an unarmed suspect cannot shield them from liability unless that failure was objectively reasonable.
Id. Once a mistake is found to be unreasonable, it cannot be the basis for excusing an officer’s conduct during the qualified immunity inquiry.
For the majority to then claim that the “specific context” that mattered in Saucier or Anderson was the subjective characteristics or intentions of the officer is a classic bait-and-switch. More importantly, it transforms qualified immunity from a rule designed to guide reasonable officers’ conduct and, in turn, hold officers accountable for not conforming their conduct to a reasonable interpretation of that guidance, into a rule that can be used to simply excuse all subjective deviations from the normal standard of care.
Qualified immunity guides and protects reasonable officers acting in grey areas of the law by “allowing] some room for discretionary judgment in what are indisputably difficult circumstances.” Melgar ex rel. Melgar v. Greene, 593 F.3d 348, 357 (4th Cir.2010). Importantly, the hypothetical reasonable officer must knowingly judge the legality of his conduct, precisely because the qualified immunity standard assumes that public officials will be guided by the law that has been clearly established. Harlow, 457 U.S. at 818, 102 S.Ct. 2727. An officer who unreasonably mistakes his gun for his taser cannot claim that his error was based on his reasonable failure to apply the law to the specific facts he faced. Any further consideration of his subjective and unreasonable failure to know that he was using deadly force therefore is incompatible with the assumption underlying qualified immunity that officers are guided by the law.
If courts, when conducting the qualified immunity analysis, must consider an officer’s subjective propensities, then the analysis ceases to guide the reasonable officer. Once courts begin to consider each individ *345 ual officer’s experience — her years on the force, her Intelligence Quotient, whether or not she suffers from attention deficit disorder — and consider how an officer with those characteristics would behave in a given factual scenario, then it is difficult to conceive of a case in which an officer would ever be denied qualified immunity. Qualified immunity becomes simply a post-hoc rationalization, not a guide for future conduct.
The doctrine of qualified immunity is a judge-made rule designed to strike the classic balance between freedom and security. See Pearson, 129 S.Ct. at 815 (noting that qualified immunity balances “the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably”). When an officer, for example, pursues a fleeing suspect into a private residence or apprehends a suspect who reasonably appears to be menacing the Vice President, it is easy enough to see how and why the balance favors the officer. Where the constitutional question is close, the harm done to society when an officer is impeded by the threat of financial liability from doing that which he reasonably believes is legal and necessary to seize dangerous criminals, outweighs the harm done to the individual whose rights are marginally violated.
But this balance cannot be squared with an officer’s unreasonable use of deadly force. We sacrifice both liberty and security when we allow police officers to shoot unarmed suspects without any reasonable basis for doing so. Police officers operating under stressful conditions requiring quick thinking have every right to know that their reasonable mistakes as to the law and relevant facts will be excused. But once it is determined that their legal and factual conclusions were unreasonable, we should not then ask the unanswerable, as the majority does when asking whether an officer unreasonably prone to accidents would have known that his unreasonableness was unreasonable under the circumstances.
As Justice Holmes put it in his seminal work, “The law takes no account of the infinite varieties of temperament, intellect, and education which make the internal character of a given act so different in different men.” Oliver Wendell Holmes, Jr., The Common Law 108 (Little, Brown, & Co. 1909) (1881). Unlike the “courts of Heaven,” our courts of law require officials to conform to objective rules and objective facts, regardless of whether they are “born hasty and awkward, [are] always having accidents and hurting [themselves] or [their] neighbors.” See id.
Officer Purnell failed to conform his conduct to the Supreme Court’s specific mandate that police not use deadly force against suspects who are unarmed and who pose no threat to the officer or others. He did so in circumstances that were objectively unreasonable in light of the suspect’s specific conduct and the crime that suspect allegedly committed. We have no power to excuse that conduct simply because Officer Purnell’s failure to behave as a reasonable officer was an accident.
I respectfully dissent.

 I do not say, as the majority claims, that there is no room for a qualified immunity analysis in excessive or deadly force cases. My point is, rather, that the inquiries are fundamentally different. Officer Purnell would still be entitled to qualified immunity in this case if his *344 actual conduct were reasonable, even if unlawful, under the circumstances. He could, for instance, argue that he reasonably believed that Henry was dangerous, even though he lacked probable cause to shoot him. Or that he reasonably believed that Garner did not apply to suspects fleeing in the specific manner in which Henry fled. But he cannot successfully argue that his intended conduct would have been legal, given that his failure to do that which he intended was objectively unreasonable. Accepting this argument requires us to extend qualified immunity to the “plainly incompetent.” See Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).