Justice Kagan,
concurring in part and dissenting in part.
Both the Court and the dissent view this case as an all-or-­nothing affair: The Court awards immunity across the board to Messerschmidt and his colleagues, while the dissent would grant them none at all. I think the right answer lies in be­tween, although the Court makes the more far-reaching error.
I agree with the Court that a reasonably competent police officer could have thought this warrant valid in authorizing a search for all firearms and related items. See ante, at 548-­549. The warrant application recounted that a known gang member had used a sawed-off shotgun — an illegal weapon under California law, see Cal. Penal Code Ann. § 33215 (West 2012 Cum. Supp.) — to try to kill another person. See App. 56-57, 59. Perhaps gang ties plus possession of an unlawful gun plus use of that gun to commit a violent assault do not add up to what was needed for this search: probable cause to believe that Bowen had additional illegal firearms (or legal firearms that he intended to use to violate the law) at the place he was staying. But because our and the Ninth Cir­cuit’s decisions leave that conclusion debatable, a reasonable police officer could have found the warrant adequately sup­ *558 ported by “indicia of probable cause.” Malley v. Briggs, 475 U. S. 335, 345 (1986). So Messerschmidt and his fellow offi­cers should receive qualified immunity for their search for firearms.
The Court, however, goes astray when it holds that a rea­sonable officer could have thought the warrant valid in ap­proving a search for evidence of “street gang membership,” App. 52. Membership in even the worst gang does not vio­late California law, so the officers could not search for gang paraphernalia just to establish Bowen’s ties to the Crips. Instead, the police needed probable cause to believe that such items would provide evidence of an actual crime — and as the Court acknowledges, see ante, at 549-551, the only crime mentioned in the warrant application was the assault on Kelly. The problem for the Court is that nothing in the application supports a link between Bowen’s gang member­ship and that shooting. Contra the Court’s elaborate theory-­spinning, see ante, at 548-553, Messerschmidt’s affidavit in fact characterized the violent assault only as a domestic dis­pute, not as a gang-related one, see App. 55 (describing the crime as a “spousal assault and an assault with a deadly weapon”). And that description is consistent with the most natural understanding of the events. The warrant applica­tion thus had a hole at its very center: It lacked any explana­tion of how gang items would (or even might) provide evi­dence of the domestic assault the police were investigating.
To fill this vacuum, the Court proposes an alternative, but similarly inadequate justification — that gang paraphernalia could have demonstrated Bowen’s connection to the Mil-­lender residence and to any evidence of the assault found there. The dissent rightly notes one difficulty with this ar­gument: The discovery of gang items would not have estab­lished that Bowen was staying at the house, given that several other gang members regularly did so. See post, at 567 (opinion of Sotomayor, J.). And even setting that issue aside, the Court’s reasoning proves far too much: It would *559 sanction equally well a search for any of Bowen’s possessions on the premises — a result impossible to square with the Fourth Amendment. See, e. g., Andresen v. Maryland, 427 U. S. 463, 480 (1976) (disapproving “ ‘a general, exploratory rummaging in a person’s belongings’ ” (quoting Coolidge v. New Hampshire, 403 U. S. 443, 467 (1971))). In authorizing a search for all gang-related items, the warrant far out­stripped the officers’ probable cause. Because a reasonable officer would have recognized that defect, I would not award qualified immunity to Messerschmidt and his colleagues for this aspect of their search.
Still more fundamentally, the Court errs in scolding the Court of Appeals for failing to give “weight to the fact that the warrant had been reviewed and approved by the officers’ superiors, a deputy district attorney, and a neutral Magis­trate.” Ante, at 554. As the dissent points out, see post, at 572-574, this Court’s holding in Malley is to the opposite effect: An officer is not “entitled to rely on the judgment of a judicial officer in finding that probable cause exists and hence issuing the warrant.” 475 U. S., at 345. Malley made clear that qualified immunity turned on the officer’s own “professional judgment,” considered separately from the mistake of the magistrate. Id., at 346; see ibid., n. 9 (“The officer . . . cannot excuse his own default by pointing to the greater incompetence of the magistrate”); id., at 350 (Powell, J., concurring in part and dissenting in part) (objecting to the Court’s decision to “give little evidentiary weight to the finding of probable cause by a magistrate”). And what we said in Malley about a magistrate’s authorization applies still more strongly to the approval of other police officers or state attorneys. All those individuals, as the Court puts it, are “part of the prosecution team.” Ante, at 554. To make their views relevant is to enable those teammates (whether acting in good or bad faith) to confer immunity on each other for unreasonable conduct — like applying for a warrant with­out anything resembling probable cause.
*560 For these reasons, I would reverse in part and affirm in part the judgment of the Court of Appeals, and I would re­mand this case for further proceedings.