*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SERGIO LOVE,

        Plaintiff-Appellee,

v

MICHAEL NOTORIANO,

        Defendant-Appellant,

and

DAVID POMEROY, CITY OF DETROIT, and
CITY OF ST CLAIR SHORES,

        Defendants.

UNPUBLISHED
November 7, 2019

No. 344227
Wayne Circuit Court
LC No. 16-008118-NO

Before: FORT HOOD, P.J., and SAWYER and SHAPIRO, JJ.

SHAPIRO, J. (*concurring*).

I fully concur in the majority opinion.

In discussing qualified immunity, the United States Supreme Court has repeatedly stated that the doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v Briggs*, 475 US 335, 341; 106 SCt 1092; 89 LEd2d 271 (1986); *Chappell v City of Cleveland*, 585 F3d 901, 907 (CA 6, 2009). The facts described by the majority are sufficient to establish that defendant was plainly incompetent or knowingly violated the law. However, as will now be reviewed, there is additional evidence that further supports our decision.

On July 21, 2013, plaintiff was traveling in a GMC Denali driven by his brother. Plaintiff's cousin, Robert Cureton, was in the front passenger seat. They stopped at a Detroit gas station and plaintiff and his brother entered the store; Cureton remained in the vehicle.

According to plaintiff,[1] when he exited the gas station store, he saw two men exit a Ford F-150 truck with guns drawn. It was clear to plaintiff that these men were officers. One, David Pomeroy, had a badge hanging from his neck. The other, defendant, was wearing what looked like police pants and boots, and also appeared to be wearing a bullet-proof vest.

Plaintiff was carrying a water bottle that he had just purchased. Defendant approached with a gun pointed toward plaintiff's face and told him to "put [his] fucking hands up." Plaintiff complied and asked defendant, "what did I do?" Defendant told plaintiff to shut up and called him a racial slur, as he would do repeatedly throughout the incident. Sometime during this initial encounter, defendant also threatened to "blow" plaintiff's "head off" if he did not comply. Defendant then grabbed plaintiff by the back of his shirt and "slammed" him against the Denali. Defendant then pressed his gun against the back of plaintiff's head. By this point, Pomeroy had his weapon aimed at Cureton, who was still seated in the passenger seat. Cureton then exited the vehicle, and Pomeroy found a firearm on Cureton. Pomeroy then said something to defendant who in turn told plaintiff that it was his "lucky day" and said, "I should blow your fucking head off . . . ." Defendant then kicked plaintiff's legs apart and patted him down, stealing money from one of his pockets in the process. Defendant did not find a weapon on plaintiff.

Pomeroy led Cureton back to the Ford F-150 truck and detained him inside the vehicle. Defendant led plaintiff to the truck with his gun still pressed against the back of plaintiff's head. Defendant then pressed plaintiff's head over the bed of the truck. While defendant was holding plaintiff down, Pomeroy went back and searched the Denali. After some time, he came back and announced to defendant, "I got it," or something to that effect.[2] Defendant then opened the door to the truck and told Cureton that he was free to go, but then struck him across the face with his gun. Defendant pulled Cureton out of the vehicle and he fell to the ground bleeding;[3] defendant directed plaintiff to also lay on the ground. Pomeroy asked defendant, "why did you do that," and directed him to "get rid of the plate." Defendant then bent the license plate on the F-150 in order to avoid identification, an action demonstrating guilty knowledge. Defendant and Pomeroy got in the truck and defendant tried to drive over plaintiff and Cureton as he backed up; plaintiff got up and was able to pull Cureton out of the way.

---

[1] While defendant denies many of plaintiff's allegations relating to this incident, we must accept plaintiff's version of events as stated in the documentary evidence because he is opposing defendant's motion for summary disposition under MCR 2.116(C)(10). See *State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth*, 317 Mich App 97, 101; 892 NW2d 451 (2016).

[2] Presumably Pomeroy was referring to the missing phone which was found in the Denali. Cureton said that he was not involved in the unarmed robbery, but had purchased the phone from someone. Plaintiff denied any involvement with or knowledge of the robbery.

[3] Cureton's claims in this case were not dismissed on the merits. Rather, his counsel withdrew after he failed to appear for a court-ordered medical examination. The court entered an order to show cause for Cureton's failure to attend the examination. After the scheduled hearing, the court dismissed Cureton's claims with prejudice for the reasons stated on the record. The transcript of that hearing is not part of the lower court record for this appeal.

The alleged actions of the defendant violated clearly established constitutional rights.  No objectively reasonable officer would believe that defendant's actions were constitutional. Further, defendant's conduct demonstrates that he was either plainly incompetent or knowingly violated the law.  The facts suggests the latter given that defendant felt it necessary to hide his license plate when leaving the scene.[4]  The officers had no interest in making a formal arrest despite finding a firearm, the stolen cellphone and marijuana.  And defendant acknowledged that he had no intention of reporting the incident to his police department.  These actions show guilty knowledge, i.e., an implicit admission that the alleged conduct was unlawful.


/s/ Douglas B. Shapiro

---

[4] Defendant admitted that he bent his license plate up before leaving the scene.