803 F.2d 722
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
RICHARD J. VALENTI, Plaintiff-Appellant
v.
AKRON POLICE DEPARTMENT; CITY OF AKRON; THOMAS OVERFIELD;
HOWARD ARNETT; WARREN HAYES; JERRY FOYS,
Defendants-Appellees.
 No. 85-3584.
 United States Court of Appeals, Sixth Circuit.
 Sept. 15, 1986.
 
 BEFORE: KRUPANSKY and WELLFORD, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Valenti perfected this appeal from summary judgment entered in behalf of the defendants-appellees. The action had been filed under the provisions of 42 U.S.C. Sec. 1983 alleging a violation of Valenti's civil rights by virtue of his false arrest by appellees.
 
 
 2
 Valenti had been arrested at his parents' home July 19, 1982 for the rape, kidnapping and attempted murder of Vicki Knapp. Ms. Knapp had described her assailant and his car, a Pinto, to police and assisted in the drawing of a composite sketch. Appellee Akron police officer Warren Hayes characterized the composite as being similar in appearance to Valenti, whom he had previously arrested for an alleged sex offense. Appellee Detective Overfield exhibited two photo arrays, in both of which Valenti appeared, to Ms. Knapp and in both instances she identified Valenti as being her assailant. Overfield also showed both photo arrays to Natalie Torma, who had been kidnapped on July 17 in the same vicinity, but who had escaped. She also identified Valenti and gave a brief description of her assailant's car which was similar to the description given by Knapp of her assailant's car. Based on these circumstances, Akron's legal advisor authorized warrants for Valenti's arrest, which was accomplished without incident. However, Valenti informed police that neither he nor his family had a Pinto. Valenti was indicted on July 21, and at a parole hearing the following week both Ms. Knapp and Ms. Torma identified Valenti as their assailant. Subsequently, however, a scientific test was conducted establishing that clear bite marks left on Ms. Knapp could not have been made by Valenti. He was exonerated of all charges on September 25, 1982, but was detained for an additional nineteen days, and about the same time the true assailant was apprehended.
 
 
 3
 Valenti then filed this action in state court, but it was removed to the district court by the defendants-appellees. The district court granted summary judgment on the ground that qualified immunity insulated the police officers, who, it found acted in good faith and with probable cause in arresting Valenti. The district court also found that the city could not be liable as a matter of law in the absence of a municipal policy that led to the alleged unconstitutional actions. This appeal ensued.
 
 
 4
 I. The Existence of Qualified Immunity.
 
 
 5
 The legal test for qualified immunity to be applied by the court is whether the conduct of the state official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986). The burden of establishing such a violation is on the defendant. Harlow, 457 U.S. at 818. We conclude that no genuine issue of fact existed within the meaning of Fed. R. Civ. P. 56(c), and that the case was therefore in proper posture for summary judgment disposition.
 
 
 6
 The following facts were established by affidavits filed in support of appellees' motion for summary judgment and were before the trial court without challenge:
 
 
 7
 1) A description of the suspect was given on two separate occasions by one victim. The second description was consistent with the victim's prior statement. Both descriptions were consistent with Valenti's appearance.
 
 
 8
 2) The victim, on the day of the incident, was able, without bias, influence or suggestion, to make a composite picture of her assailant.
 
 
 9
 3) The composite was independently identified as being of Valenti by an Akron police officer who, prior and subsequent to receiving it had no part in the investigation other than providing this information.
 
 
 10
 4) The booking pictures of appellant on file in the Akron Police Department were strikingly similar to the composite.
 
 
 11
 5) Two different photo arrays, each containing a different picture of appellant, were prepared and shown at different times to the two victims and one witness. Each positively identified Valenti as the assailant.
 
 
 12
 6) Appellant had a criminal history of sex related offenses.
 
 
 13
 7) The arrest warrant was issued by the police legal advisor, a prosecuting attorney familar with criminal law, on the basis of a full and fair disclosure of the facts of the investigation.
 
 
 14
 8) Appellee Overfield continued his investigation in an attempt to locate the assailant's vehicle as described to him by victims and witnesses.
 
 
 15
 9) Following his arrest, Valenti was identified by both victims as their assailant at a hearing before the Ohio Parole Authority.
 
 
 16
 In the absence of controverting evidence, these facts clearly establish that probable cause existed for the arrest of the appellant, and that the arresting officers acted in good faith. It follows that the individual appellees are entitled to qualified immunity on the facts established by the record, and that the district court did not err in granting summary judgment in their favor.
 
 
 17
 II. Police Conduct As Reflecting Established Policy of the City of Akron.
 
 
 18
 The decision of the Supreme Court in Monell v. NYC Dept. of Social Services, 436 U.S. 658 (1978), stands for the proposition that a local government can be held liable under the theory of respondeat superior only
 
 
 19
 when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Sec. 1983. Id. at 694.
 
 
 20
 See also Pembaur v. City of Cincinnati, --- U.S. ----, 54 USLW 4289, (March 25, 1986).
 
 
 21
 Valenti argues that the edicts of appellee Captain Jerry Foys, supervisor of the Akron Police Department Detectives and Investigation subdivisions, represent the policy and custom of the Detective Bureau of the appellee City of Akron. Valenti contends that the city and its police department should be liable because of Foys' knowledge and approval of Overfield's alleged unconstitutional acts. However, construing the applicable portions of the record in the light most favorable to appellant, such knowledge on the part of Foys and acts by Overfield do not as a matter of law rise to the level of establishing any policy or custom of the Detective Bureau. Since appellant suggests no other basis for liability on the part of the City of Akron, we conclude that the entry of summary judgment on its behalf was not erroneous.
 
 
 22
 AFFIRMED.