856 F.2d 194
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James R. HENEGAR, Plaintiff-Appellee,
v.
CITY OF MORRISTOWN, TENNESSEE, Defendant,
Mike Finley, Defendant-Appellant.
 No. 87-5653.
 United States Court of Appeals, Sixth Circuit.
 Sept. 1, 1988.
 
 Before KEITH and ALAN E. NORRIS, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Defendant-appellant, Mike Finley, a police officer, appeals the judgment entered on a jury verdict in favor of the plaintiff-appellee, James Henegar, in this civil rights action. On appeal, we consider the applicability of absolute and qualified immunity.
 
 
 2
 In the fall of 1985, the Morristown Police Department hired an informant to assist in an undercover investigation by making drug purchases and relaying information regarding persons involved in the sale of drugs to the police. The informant reported directly to Officer Mike Finley of the Narcotics Unit. This undercover operation continued for several months, culminating in the arrests and prosecution of more than ten persons for trafficking in narcotics. Drugs were purchased from an unidentified white male on three separate occasions. The informant described the man as 5'8" to 5'11" tall, heavyset, 180 pounds, with long, shabby dark brown or black hair, a scraggly beard, and wearing a white painter's cap.
 
 
 3
 The first purchase of marijuana occurred on October 8, 1985 in the Morristown housing project. The informant observed the unidentified man remove the drugs from a car with license plate number 20-029C. The informant asked Scott Mutter, who had helped the informant arrange the drug transactions, to introduce him to the unidentified man, but Mutter refused. Mutter told the informant that the unidentified man was named Gary and his mother was a schoolteacher. Officer Finley pressed the informant to obtain more specific details about the identity of the seller, but the informant testified that the unidentified man was evasive about meeting at his house, and the informant had to go by what Mutter told him.
 
 
 4
 On October 10, 1985, the informant purchased marijuana from the unidentified white male at Kidwell's Ridge Market, which is approximately four and one-half miles from the housing project. The informant was told by Scott Mutter that the man lived in an apartment behind Kidwell's Ridge Market. The unidentified man sold marijuana to the informant again on October 17, 1985 at Kidwell's Ridge Market. On this occasion, the seller was referred to as Jeff.
 
 
 5
 Officer Finley checked the license plate number observed by the informant and determined that the car was registered to Jewelleen Henegar. Officer Finley's supervisor, Sam Cook, called the Morristown Housing Authority and learned that Jewelleen Henegar lived in the housing project and that her son James lived with her. At that point, Officers Cook and Finley concluded that the unidentified white male was possibly James Henegar.
 
 
 6
 Officer Finley also attempted to corroborate the information given to the informant by Mutter. He drove around the Kidwell's Ridge Market area, but did not locate any of the cars described by the informant. He contacted the local school principal, who informed him that Jewelleen Henegar had not been employed by that school system. He also learned that Jewelleen Henegar had never lived in the Kidwell's Ridge Market area. The investigation ended and Officer Finley did not make any other efforts to identify the unknown man.
 
 
 7
 In February 1986, Officer Finley testified before the Hamblen County Grand Jury about the information obtained through the undercover investigation. The grand jury issued presentments against several people with whom the informant had dealt, including two presentments charging James Henegar and Scott Mutter with the sale of marijuana on October 10 and 17, 1985. The grand jury also issued capiases for their arrest. Henegar turned himself in to the Morristown police the next day. He was booked by Officer Cook and transported to the Hamblen County Jail where he was photographed and his physical description was recorded. Three hours later, Henegar was released on $10,000 bail.
 
 
 8
 On March 3, 1986, Officer Finley testified before the grand jury regarding the marijuana purchase on October 8, 1985. The grand jury issued another presentment and capias for Henegar's arrest. Henegar turned himself in to Officer Finley the next day, and he remained in the Hamblen County Jail for about twenty hours before he was released on his existing bail bond. On this occasion, Henegar insisted that he had been out of town when the offenses were committed and that the police had the wrong man. Because of Henegar's protests, Officer Finley showed Henegar's booking photograph to the informant the next morning. The informant indicated that Henegar was not the white male who sold him the drugs. Officer Finley went immediately to the attorney general's office to have the charges against Henegar dismissed.
 
 
 9
 Henegar filed this 42 U.S.C. Sec. 1983 action against Officers Finley and Cook, Police Chief Joel Seal, and the City of Morristown, alleging that defendants violated his constitutional rights by failing to corroborate information received from the informant, appearing before the grand jury, and arresting him. The City of Morristown was dismissed prior to trial, and Officer Cook and Chief Seal were dismissed at the close of Henegar's evidence. Officer Finley's motion for directed verdict on the basis of absolute or qualified immunity was denied, and the case against him was submitted to the jury, which found in favor of Henegar and awarded $50,000 compensatory and $25,000 punitive damages.
 
 
 10
 The first issue to be addressed is whether Officer Finley is entitled to absolute immunity. Officer Finley argued that, under Briscoe v. LaHue, 460 U.S. 325 (1983), he is absolutely immune from liability for his testimony in judicial proceedings, including grand jury proceedings. E.g., Alioto v. City of Shively, Ky., 835 F.2d 1173, 1174 (6th Cir.1987); Kincaid v. Eberle, 712 F.2d 1023, 1023-24 (7th Cir.), cert. denied, 464 U.S. 1018 (1983). Henegar, relying on Malley v. Briggs, 475 U.S. 335 (1986), claimed that the basis of liability is Officer Finley's conduct in presenting the case to the grand jury, when a reasonable police officer would have known that he did not have probable cause.
 
 
 11
 The affirmative defense of absolute immunity was pleaded in the answer, and properly raised in a motion to dismiss under Fed.R.Civ.P. 12(b)(6). The district court did not rule on this issue prior to trial. At the close of Henegar's case, Officer Finley's counsel moved for a directed verdict on the ground of absolute immunity. However, counsel did not clearly articulate the basis for the defense, and the district court did not squarely address the issue. There was no evidence produced at trial which adequately explained whether Officer Finley did anything more than simply testify as a witness before the grand jury. Unfortunately, the district court did not explain why Officer Finley was not entitled to absolute immunity under Briscoe v. LaHue when it denied his motion for directed verdict. Accordingly, this court is at a disadvantage in attempting to review the propriety of the district court's decision and assess the applicability of absolute immunity under the circumstances of this case.
 
 
 12
 However, assuming for purposes of argument that absolute immunity does not apply, we are of the opinion that a verdict should have been directed for Officer Finley on the ground of qualified immunity. As the Supreme Court pointed out in Malley v. Briggs, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." 475 U.S. at 341. The question is "whether a reasonably well-trained officer in [Finley's] position would have known that his [testimony] failed to establish probable cause and that he should not have applied for the warrant." Id. at 345. Officer Finley "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Id. at 341.
 
 
 13
 When Officer Finley appeared before the grand jury the first time, he had reliable information, based on the informant's first-hand observations, Officer Cook's inquiries and his own investigation, that a drug buy from an unidentified white male took place in the housing project; that the drugs were removed by the unidentified man from a car registered to Jewelleen Henegar; that Jewelleen Henegar lived in the housing project; and that her son James lived with her. This information strongly pointed to James Henegar, the man most likely to have access to Jewelleen Henegar's car. The informant made subsequent purchases from the unidentified male. Officer Finley made several attempts to confirm each piece of information about the seller which had been given to the informant by Scott Mutter, but this information did not check out. The informant had earlier explained to Officer Finley that Mutter was reluctant to reveal any details about the seller's identity, and that Mutter told the informant that the unidentified man's name was Gary, while on another occasion he was referred to as Jeff. Officer Finley could reasonably have concluded that Mutter deliberately gave the informant misinformation in order to protect the seller and mislead the informant. It is significant that none of the information obtained from Mutter contradicted the more reliable information received from the paid informant. Henegar asserted that Officer Finley should have done more to ascertain the identity of the unknown white male before going to the grand jury, but we believe that given the information in Officer Finley's possession, a reasonably competent police officer could have concluded that he had sufficient facts to establish probable cause and that an arrest warrant should issue. At the very least, officers of reasonable competence could disagree as to whether there was probable cause.
 
 
 14
 The second appearance before the grand jury presents a different question because at this point Officer Finley had access to booking information, including an accurate physical description and a photograph of Henegar, which could have been checked against the information given to him by the informant. There were discrepancies between the informant's physical description of the unidentified white male and Henegar's actual appearance. Henegar was 5'7"' tall, weighed 130 pounds, and had no beard, whereas the informant described the unidentified man as 5'8" to 5'11" tall, heavyset, with a scraggly beard. However, prior to his second grand jury appearance, it was not brought to Officer Finley's attention that perhaps he had the wrong man or that he needed to check the information contained in the police file against the data taken at Henegar's booking. It is important to note that, after the second presentment, when Henegar insisted that he had been out of town in October 1985, Officer Finley took immediate action to confirm Henegar's assertions and to have the charges against him dismissed. At the very least, we believe that officers of reasonable competence could disagree on the issue of whether Officer Finley had probable cause to seek a second presentment against Henegar.
 
 
 15
 In light of our disposition of the qualified immunity issue, we need not address Officer Finley's remaining contentions that the district court erred in admitting certain evidence and in denying his motion for judgment n.o.v.
 
 
 16
 For the foregoing reasons, we reverse the judgment and direct the district court to enter a judgment of dismissal.