933 F.2d 1001
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Deborah Susan FERGUSON, Plaintiff-Appellee,
v.
Gene TAYLOR, both individually and in his official capacity
as Sheriff of Anderson County, South Carolina,
Defendant-Appellant,
and
James M. Cox, Jr., David L. Hooper, Harvie E. Banister,
Elise C. Cahaly, and J. Mike Holden, in their official
capacities as members of the County Council of Anderson
County, South Carolina and County of Anderson, Defendants.
 No. 90-1410.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 11, 1991.
Decided May 21, 1991.
 
 Appeal from the United States District Court for the District of South Carolina, at Anderson. Matthew J. Perry, Jr., District Judge. (CA-89-985-8)
 James D. Brice, Rainey, Britton, Gibbes & Clarkson, P.A., Greenville, S.C. (Argued), for appellant; Ronald G. Tate, Jr., Rainey, Britton, Gibbes & Clarkson, P.A., Greenville, S.C., on brief.
 James Bard King, Anderson, S.C., for appellee.
 D.S.C.
 REVERSED.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Sheriff Gene Taylor appeals the district court's denial of his motion for summary judgment, based on his defense of qualified immunity, in an action brought against him and Anderson County under 42 U.S.C. Sec. 1983 by Deborah Susan Ferguson in which she claimed that Sheriff Taylor violated her constitutional rights by arresting her without probable cause. The district court granted summary judgment to Anderson County and Sheriff Taylor in his official capacity, but denied summary judgment to Sheriff Taylor in his individual capacity. Only Taylor appeals.
 
 
 2
 We reverse.
 
 
 3
 * During February 1989, Deborah Ferguson rented a booth at a flea market called the Jockey Lot in Anderson County, South Carolina. After receiving information from a confidential informant that someone was selling counterfeit audio tapes at the Jockey Lot, Anderson County Sheriff Taylor decided to investigate. He went to the Jockey Lot and purchased three tapes from Ferguson. The tapes sold for $1.00 each.
 
 
 4
 Taylor examined the tapes and found that their packaging and labeling appeared inferior to genuine audio cassette tapes. Because he suspected that the tapes were counterfeits, Taylor showed them to Harry Davidson, a consultant to the Recording Industry Association of America. Davidson opined to Taylor that the tapes were in fact counterfeit. Davidson saw that the graphics and the printing on paper inserts inside the cassettes were clearly copies and that the printing was blurry and off-color.
 
 
 5
 After consulting with Davidson, Taylor decided to charge Ferguson with unauthorized sale of recorded sounds and illegal distribution of recordings without identification of the manufacturer's name and address in violation of South Carolina Code Sections 16-11-910 and 16-11-930, respectively. He therefore went to a magistrate and applied for a warrant to arrest Ferguson basing his application on his own observation of the tapes, Davidson's expert opinion, and the extremely low price Ferguson was charging for the tapes.
 
 
 6
 The magistrate issued the warrant, and Taylor used it to arrest Ferguson back at the Jockey Lot in the same booth that she was operating when Taylor purchased the tapes from her. Two days later, however, Ferguson told Taylor that she did not own the tapes, and that she was selling them for a friend's benefit. She and her friend met with Taylor, at which time he explained that Ferguson would have to attend a preliminary hearing for the charges to be dropped. Sheriff Taylor testified at that hearing that he believed that the tapes did not belong to Ferguson. The charges were dismissed, and Ferguson then brought this action against Anderson County, and Taylor in his official and individual capacities.
 
 
 7
 As indicated, the district court dismissed the claims against Anderson County and Sheriff Taylor in his official capacity, but refused to grant Taylor summary judgment on the basis of qualified immunity to the claim against him in his individual capacity. Taylor appeals from that denial.
 
 II
 
 8
 We review the district court's denial of summary judgment de novo, on the summary judgment record made in that court.
 
 
 9
 Ferguson successfully resisted the motion with affidavits and depositions which she contended showed that Taylor's arrest of her was not based on any objectively reasonable belief that she was guilty of the offenses charged, but instead on his inexperience in law enforcement, having been in office for less than two months, and his improper reliance on Davidson's advice. She further relied on an affidavit by the issuing magistrate that he told Taylor that the case would be hard to prove in court. Finally, she relied on materials suggesting that Taylor had arrested her for political reasons--specifically as a means of retaliating against the Jockey Lot owners who had supported his opponent in the 1988 election; that he had made calls to state and federal agencies in an attempt to initiate an investigation of the Jockey Lot; and that when Taylor came to arrest her, he brought along representatives from television stations and newspapers to cover the arrest in an effort to create bad publicity for the Jockey Lot.[1]
 
 
 10
 Government officials are entitled to qualified immunity "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). In determining whether a particular government official is entitled to qualified immunity, it is necessary for courts
 
 
 11
 first to identify the specific constitutional right allegedly violated, then to inquire whether at the time of the alleged violation it was clearly established, then further to inquire whether a reasonable person in the official's position would have known that his conduct would violate that right.
 
 
 12
 Collinson v. Gott, 895 F.2d 994, 998 (4th Cir.1990) (concurring opinion).
 
 
 13
 Here, Ferguson's claim is that Taylor violated her fourth amendment right to be free from an arrest that was not based upon probable cause.[2] Ferguson's general right to be free from an unlawful arrest is of course clearly established--under the fourth amendment, police officers must have probable cause before they arrest a suspect. As the Supreme Court stated in Brinegar v. United States, 338 U.S. 160 (1949):
 
 
 14
 Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.
 
 
 15
 338 U.S. at 175-76 (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). Therefore, if "a man of reasonable caution" in Taylor's situation would have believed that Ferguson had committed an offense, Taylor had probable cause to arrest Ferguson.
 
 
 16
 However, the question here is not whether Taylor actually had probable cause, but only "whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Malley v. Briggs, 475 U.S. 335, 345 (1986). This is an objective inquiry about what a reasonable officer would have believed in Taylor's situation. See Anderson, 483 U.S. at 639. The fact that a neutral magistrate signed the arrest warrant is not dispositive of whether Taylor's actions were reasonable under the circumstances. Malley, 475 U.S. at 345-46. If a reasonable officer could have believed that probable cause existed to get the arrest warrant, then Taylor is entitled to qualified immunity. We conclude that he is.
 
 
 17
 Ferguson makes two main arguments that under this standard Taylor is not entitled to qualified immunity. First, she contends that South Carolina Code Sections 16-11-910 and 16-11-930 require that the defendant sell the tapes with actual knowledge that they were counterfeit[3] and that on the basis of the information Taylor had, no reasonable police officer could have believed that Ferguson probably knew that the tapes were counterfeit. Taylor counters that the statutes do not require direct proof of knowledge, but instead allow knowledge to be proved circumstantially. In support of the reasonableness of this perception of relevant law, he cites a South Carolina case that involved receipt of stolen goods, in which the Supreme Court of South Carolina held that "[g]uilty knowledge is seldom susceptible of proof by direct evidence and may be proved by circumstances from which such knowledge may be inferred." State v. Atkins, 136 S.E.2d 298, 299 (S.C.1964). Here, Taylor argues, when he saw Ferguson selling the tapes, it was reasonable for him to infer that she knew that the tapes were counterfeit, given the inferior quality of the tapes and their extremely low price.
 
 
 18
 In response, Ferguson contends that a reasonable officer in Taylor's position would have known that he did not have probable cause because he could not identify the master disc owners of the tapes, and would have made an investigation that Taylor did not into whether Ferguson had gotten consent to sell copies of the tape. To which Taylor counters that because a person knowledgeable in the matter of counterfeit and pirated tapes had told Taylor that the tapes were indeed counterfeits, Taylor had reason to believe that these tapes were not being sold with the owner record company's consent.
 
 
 19
 In assessing the propriety of refusing to find Taylor entitled as a matter of law to qualified immunity on this record, it is important to keep in mind that we are not reviewing a conviction of Ferguson under these statutes or even determining whether Taylor actually had probable cause. Instead, we are asking whether a reasonable officer in Taylor's situation could have believed that he had probable cause to arrest Ferguson. With that in mind, we believe the following undisputed facts of record demonstrate the reasonableness of Taylor's belief: he had heard a tip about sale of counterfeit tapes at Jockey Lot, he had purchased the tapes himself from Ferguson, the tapes appeared to him to be counterfeit because they were inferior in appearance from genuine tapes, the tapes were sold for a much lower price ($1.00) than a normal tape, Taylor took the tapes to an expert to corroborate his opinion and that expert had no doubt that the tapes were counterfeit, a magistrate agreed to sign the arrest warrants, and when Taylor returned with the warrant, Ferguson was in the booth again, selling tapes. Considering all of these factors, it was objectively reasonable for an officer in Taylor's situation to believe he had probable cause to arrest Ferguson.
 
 
 20
 Ferguson's second argument is based on Taylor's alleged lack of good faith and his motivation for arresting her. She claims that summary judgment was improper because the parties are in dispute over Taylor's motivations for the arrest, she having produced evidence that it was politically motivated. This argument is unavailing.
 
 
 21
 Taylor's personal motivation is irrelevant if a reasonable officer in Taylor's circumstances would believe that he had probable cause to arrest Ferguson. The qualified immunity test is objective in nature. Even if Ferguson could prove that Taylor had political motives for arresting her, it would be irrelevant as long as it was reasonable for Taylor to believe that he had probable cause. Cf. Graham v. Connor, 490 U.S. 386, 397 (1989) (in assessing a fourth amendment claim of excessive force in making an arrest, an officer's "evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force"). Thus, the facts that are in dispute regarding Taylor's possible political motivation are immaterial to the qualified immunity issue.
 
 
 22
 Because we conclude that on the summary judgment record Taylor was entitled to qualified immunity as a matter of law, we reverse.
 
 
 23
 REVERSED.
 
 
 
 [1]
 The magistrate's affidavit, along with others relied on by Ferguson, does not appear in the joint appendix. Sheriff Taylor claims that these affidavits were never properly before the district court because Ferguson did not file them in a timely manner under Local Rule 12.06 of the United States district court for the district of South Carolina. Taylor also argues that some of the affidavits (though not the affidavit of Magistrate McKoy) were from people who were not identified as witnesses during discovery, and therefore would have been prohibited from testifying at trial under Fed.R.Civ.P. 56(e). Although Taylor raised this point at the summary judgment hearing, the district court apparently never ruled on the admissibility of the affidavits. We need not determine whether these affidavits were properly before the district court, because even assuming that they were, we would find Taylor entitled to qualified immunity
 
 
 [2]
 Ferguson also alleges in her complaint that Taylor's actions violated her due process rights, but in her brief she relies solely on her "4th amendment rights," and it is so that we analyze the case
 
 
 [3]
 South Carolina Code Sec. 16-11-910 provides in relevant part:
 Any person shall be deemed guilty of a misdemeanor and upon conviction shall be punished as provided for in Sec. 16-11-920 who:
 (1) Knowingly and willfully transfers or causes to be transferred, without the consent of the owner, any sounds recorded on phonograph record, disc, wire, tape, film or other article on which sounds are recorded, with intent to sell or cause to be sold, or to use or cause to be used for profit through public performance, such article on which such sounds are so transferred;
 (2) Advertises, offers for sale or sells any such article described in item (1) with the knowledge that the sounds thereon have been so transferred without the consent of the owner.
 South Carolina Code Sec. 16-11-910 (emphasis added).
 Section 16-11-930 provides in relevant part:
 Any person who manufactures or knowingly sells, distributes, circulates, or causes to be sold, distributed or circulated for profit any phonograph record, tape or album of phonograph records or tapes, without the actual name and street address of the manufacturer thereof, and the name of the actual performer or group prominently disclosed on the outside cover or jacket containing such record, tape or album of records or tapes shall be deemed guilty of a misdemeanor and upon conviction shall be punished as provided for in Sec. 16-11-940....
 South Carolina Code Sec. 16-11-930 (emphasis added).