**Carl A. PRZYBOROWSKI, Plaintiff,**

v.

**Clifford E. HOWARD; Edward B. Pope, individually and in his official capacity as Mayor of the City of Washington, Georgia; and Roger G. Weston, individually and in his official capacity as Chief of Police of the City of Washington, Georgia, Defendants.**

Civ. No. 93–348–P–H.

United States District Court,
D. Maine.

July 7, 1994.

---

Paul F. Macri, Julian L. Sweet, Berman & Simmons, P.A., Lewiston, ME, Jerry S. Menge, Robert F. Coleman, Eugene J. Schiltz, Robert A. Coleman & Associates, Chicago, IL, for plaintiff.

Leanne Robbin, Asst. Atty. Gen., Augusta, ME, for Howard.

Stephen G. Grygiel, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, ME, for Pope and Weston.

## ORDER ON DEFENDANT HOWARD'S MOTION FOR SUMMARY JUDGMENT

HORNBY, District Judge.

At the heart of this dispute are conflicting claims over ownership of a letter written by Confederate General Robert E. Lee on October 31, 1863, to Colonel Edward Willis. When the letter surfaced in Maine as part of a number of items to be auctioned at a local auction house, the city of Washington, Georgia, whose museum claimed ownership, mounted every effort to retrieve it. In the process, a Maine state police detective, defendant Clifford Howard, applied for, ob-

tained and executed a warrant on the principal of the auction house in Maine and thereby seized the letter. He then turned it over to the police chief from Washington, Georgia, who came to Maine to obtain it. The letter is now presumably in the hands of the museum in Washington, Georgia.

The plaintiff, Carl Przyborowski, the person who had consigned the letter to the auction house, also claims ownership of the letter, as Detective Howard knew before he seized the letter. Przyborowski has sued Detective Howard under 42 U.S.C. § 1983 along with the mayor and chief of police of Washington, Georgia, and the Washington–Wilkes Historical Museum. Przyborowski claims that Howard took the letter from him without due process of law, specifically, in submitting a materially false affidavit to the magistrate to secure a warrant to seize the letter and in not providing a judicial hearing before turning the letter over to Georgia authorities. Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ.J. at 1–2. Przyborowski also has a state law conversion claim. Detective Howard has moved for summary judgment on the basis of qualified immunity for the federal claim and absolute immunity for the state claim. Concluding that a reasonable police officer having the information available to Detective Howard would have no reason to believe that he was violating a clearly established constitutional right of the plaintiff (federal claim) and that Detective Howard acted in an entirely discretionary capacity (state claim), I GRANT defendant Howard's motion for summary judgment.

### 42 U.S.C. § 1983

The test for qualified immunity is clear. As the United States Supreme Court stated in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982): "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

at 818, 102 S.Ct. at 2738. Moreover, the test is not subjective but objective. Thus, the issue is not what Detective Howard actually believed but what an officer with the same information could reasonably have believed. *See Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Prokey v. Watkins*, 942 F.2d 67, 73 (1st Cir.1991). A reasonable officer in Detective Howard's shoes could have believed that his actions in returning the letter to Washington, Georgia, law enforcement authorities without a prior hearing, was lawful in light of the information he possessed.[1] Przyborowski was not able to establish clear title to the letter. The most that can be said is that there was and remains a genuine dispute over its ownership. Although it is undisputed that Detective Howard was aware of Przyborowski's claim, it is also undisputed that Przyborowski or his lawyer, as well as the lawyer for the auction house, knew that Detective Howard intended to seize the letter and return it to Washington, Georgia. Howard Dep. at 100, 195–96. Howard made known his intention to obtain a search warrant so that anyone who wished to assert a civil claim to the letter could do so before the letter was actually returned. *Id.* at 196. Przyborowski argues that Howard cannot claim qualified immunity because he was not turning the letter over to Washington, Georgia, as part of a criminal investigation but instead in order to assist the museum in asserting its civil claim to the letter. Whatever Howard's personal beliefs, however, the information he had would have justified a reasonable police officer in believing that the letter was the fruit of a Georgia crime and should be turned over to Georgia authorities as evidence. Detective Howard was not violating any clearly established constitutional right of Przyborowski by cooperating with the Georgia authorities, particularly given the advance notice of the intended seizure he provided to Przyborowski.

Assuming that Przyborowski's claim to the letter also gives him standing to object

---

1. Washington, Georgia, law enforcement authorities claimed that the letter had been stolen from the museum and sought its return. *See* Weston Statement, Attach. 3 to Ex. A of Howard Aff. at 3.

The Maine district attorney treated the case as one seeking the fruits of a crime committed in a foreign jurisdiction. *See, e.g.,* Cantara Dep. at 17, 20.

to the seizure of the letter under warrant, I conclude that Detective Howard violated no clearly established constitutional right of Przyborowski in applying for and executing the warrant. The major challenge to Detective Howard's qualified immunity defense here is that Howard's warrant application stated two grounds: (1) investigation of the Maine crime of receipt of stolen property on the part of auction house principal James Smith; and (2) seizure of the letter as evidence of the commission of a crime in another jurisdiction, namely theft in Georgia— whereas in a later affidavit Detective Howard stated that, at the time he applied for the warrant, he believed Smith to be "innocent" of any crime. Detective Howard has now disavowed any belief in Smith's "innocence" and has claimed in his deposition that such words in the affidavit prepared for his signature were not his language. Instead, he now claims that his understanding from the district attorney was simply that if Smith cooperated he would not be prosecuted.[2] For purposes of the summary judgment motion, however, I will assume that Howard believed in Smith's innocence when he prepared the warrant application and that the application was therefore false in referring to the seizure as part of an investigation of receiving stolen property in Maine. Even if I strike all reference to the receipt of stolen property in Maine from the application, however, *see Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978), the magistrate could still have issued the warrant on the second ground. Indeed, in this case I have the unusual situation where the magistrate, a justice of the peace, has testified at deposition that he believed there was probable cause on each ground alone.

O'Toole Dep. at 25. Although Przyborowski has obtained testimony from Detective Howard that Howard himself is uncertain whether he could have seized the letter simply as evidence for the Georgia criminal investigation, the district attorney has testified that such is an adequate ground for the warrant. Przyborowski has cited no Maine law to the contrary. As a result, I conclude that probable cause was arguable. Przyborowski has therefore failed to show that it was "clearly established" that a warrant in Maine could not be used for such a purpose.[3] Detective Howard did not violate any clearly established constitutional right by seizing the property pursuant to the warrant.

Consequently, under the *Harlow* standard, Detective Howard is entitled to qualified immunity.

### STATE LAW CONVERSION

 Howard is also entitled to immunity on the state law conversion claim. The Maine Tort Claims Act insulates police officers absolutely when performing "discretionary functions." 14 M.R.S.A. § 8111(1)(C). So long as an officer acts within "the *scope* of any discretion he could have in his official capacity," he enjoys immunity, regardless of the actual legality of his conduct. *Polley v. Atwell*, 581 A.2d 410, 414 (Me.1990). When Detective Howard responded to a request from the Washington, Georgia, police to assist in a criminal investigation by deciding to seek a warrant, seize the letter and transfer it to the Washington police, he acted firmly within that scope. *See Restatement (Second) of Torts* § 895D cmt. g (1979).[4] Detective Howard is therefore immune from the state law claim.

2. The magistrate has likewise testified, "I don't remember [Howard] saying whether [Smith] was innocent. I remember him saying that he wasn't going to be prosecuted as far as I know." O'Toole Dep. at 17. Moreover, Howard attached to his affidavit for the magistrate's consideration all the correspondence from Przyborowski's lawyer describing his claim. Thus, the magistrate was in a position to evaluate independently whether there was probable cause to believe that a crime had been committed in Maine.

3. The test is "whether a reasonably well-trained officer in [Howard's] position would have known that his affidavit failed to establish probable

cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986).

4. Detective Howard did more here than simply "execute" a warrant in a ministerial manner. Although *Kane v. Anderson*, 509 A.2d 656, 657 (Me.1986), held that the mere "execution" of an arrest warrant is not a discretionary act, Howard is not sued over the manner in which he executed the warrant but for choosing to seek it in the first place and then turning the letter over to Georgia authorities after he executed the warrant. These are discretionary acts.

For these reasons, Clifford Howard's motion for summary judgment is GRANTED.

SO ORDERED.