{¶ 24} I agree with the majority's conclusions that Officer Quickert was properly granted summary judgment and that, on the current state of the record, reasonable minds could differ as to whether Officer Ashenhurst acted recklessly. I write separately because I wish to emphasize that the facts of this and virtually every case in which qualified immunity is raised merit individualized evaluation.
 {¶ 25} As we have herein, courts must undertake close inspection of the individual facts and remain mindful of the rationale for the existence of the defense of qualified immunity. "The doctrine [of qualified immunity] recognizes that [police officers] must routinely make close decisions in the exercise of their authority and that the law that guides their conduct is often ambiguous and difficult to apply." Murphy v. Reynoldsburg
(Aug. 8, 1991), Franklin App. No. 90AP-1296, reversed on other grounds (1992), 65 Ohio St.3d 356, citing Davis v. Scherer
(1984), 468 U.S. 183, 196. "Qualified immunity, therefore, encourages government officials to act without hesitation when confronted with a problem that requires a quick and decisive response and ameliorates the concern that most persons would be reluctant to participate in public service in the absence of such immunity." Scott v. Columbus (Mar. 30, 2001), Franklin App. No. 00AP-689.
 {¶ 26} The standard for qualified immunity is one of objective reasonableness. Id. As such, claims of qualified immunity are to be analyzed on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, in light of clearly established law and the information that he possessed. Id. "[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized."Malley v. Briggs (1986), 475 U.S. 335, 341. Thus, "even if the official's conduct is ultimately proved legally wrong, he still will be entitled to immunity as long as his decision was objectively reasonable." Scott.
 {¶ 27} Turning to the present case, unlike the majority, I believe that Officer Ashenhurst did explain why he failed to check the physical description of the wanted person associated with the vehicle appellant was driving. As the majority notes, Officer Ashenhurst referred to the wanted individual as "Markeeta" both at the scene of appellant's detention and at his deposition, even though the LEADS printout spelled the name "Markedis." The officer testified at his deposition that he "assum[ed] that Markedes is an alias of [the appellant] or her sister at the time." (Ashenhurst Depo. at 31.) He testified that he first became aware that the wanted person was a man during the internal affairs investigation of this incident. At the moment he initiated the traffic stop, he clearly thought (incorrectly, as it turned out) that the name of the wanted person displayed on LEADS identified a woman. This serves as an explanation, but is insufficient to demonstrate the absence of a genuine issue of fact with respect to recklessness. Therefore, I concur in the majority's reasoning and in the judgment.