RONALD LEE GILMAN, Circuit Judge,
concurring.
I fully agree with the majority that summary judgment was properly denied as to the claim by Bing’s estate that the police used excessive force in trying to arrest Bing. My primary disagreement with the majority relates to its holding that “exigent circumstances” justified the warrant-less intrusions into Bing’s residence in the first place. I would hold that such intrusions violated his Fourth and Fourteenth Amendment rights, even though I ulti *573 mately agree that the constitutional violation was not so clearly established at the time of the events in question as to deny the officers qualified immunity.
My view of this case starts with the fundamental principle that “searches and seizures inside a home without a warrant are presumptively unreasonable.” Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Although exigent circumstances can overcome this presumption, the only possible exigency that would be applicable here is that “the suspect represented an immediate threat to the arresting officers or the public.” Jones v. Lewis, 874 F.2d 1125, 1130 (6th Cir.1989). I do not believe that such an immediate threat'was present in the case before us.
In particular, I do not find this circuit’s decision in O’Brien v. City of Grand Rapids, 23 F.3d 990 (6th Cir.1994), to be distinguishable. If anything, that was a stronger case for finding an exigency because O’Brien had “previously shot and wounded a citizen in the front yard of the same premises” to which the officers responded. Id. at 1000. O’Brien had shown more than a willingness to fire his weapon in the am; he had demonstrated in the past a willingness to shoot a person in his yard. Despite these circumstances, this court still concluded that there were no exigent circumstances justifying an exception to the warrant requirement. Id. at 998.
I acknowledge the fact that, in O’Brien, four-and-one-half hours passed prior to the police inserting the first probe into O’Brien’s house, id. at 998, whereas here only two hours and thirteen minutes went by before the police broke out a window and threw in the bag phone. But here, like in O’Brien, Bing had taken no action against the officers or anyone else in the period of time between their arrival on the scene and when they finally acted. See id. at 997. He had no hostages, was not brandishing a gun, and was not shouting at the police or the neighbors. Like in O’Brien, “there [wa]s no evidence establishing that the threat of danger was ‘immediate.’ ” Id. at 998. I see no reason why there was not sufficient time under the circumstances for the police to seek a warrant to enter Bing’s house.
The majority attempts to analogize the present case to Hancock v. Dodson, 958 F.2d 1367 (6th Cir.1992), in order to demonstrate that the officers in this case were presented with exigent circumstances, going so far as saying that the facts here present an even stronger case for exigency. I respectfully disagree. In Hancock, the police responded to reports of an unstable man in the midst of a domestic dispute who had gone out to his barn with one of his guns. Hancock, 958 F.2d at 1369. When Hancock spoke with a police radio dispatcher who called his house, he said “if you send any cops over here, I’ll kill them.” Id. When the police arrived, one officer approached the back screen door of Hancock’s house. Id. From that vantage point, the officer could see a gun near the front door, could hear yelling in a hostile tone, and could see Hancock standing on the front porch, but could not tell whether he was armed. Id. at 1369, 1375. The officer then entered the house and moved to the front door. Id. at 1369. Upon reaching the front door, the officer drew his gun, opened the door, and stepped out onto the porch where Hancock was verbally confronting other officers on the scene. Id. This court concluded that “the factual record amply demonstrate[d] that exigent circumstances existed” to enter Hancock’s home. Id.
This case is different from Hancock. When the officer in Hancock entered the house, the potential gunman posed far *574 more of an immediate threat. Hancock had told the police dispatcher that he would kill any responding officers. Moreover, the officer could see a firearm within a short distance of Hancock, and he could see Hancock himself, who was on the porch shouting at other officers in a hostile tone. These circumstances are a far cry from those in this case, where Bing (1) had withdrawn into his house for over two hours before the police broke his window and progressively inserted a bag phone, pepper gas, and flashbangs, (2) had not been brandishing a gun, (3) had not declared that he would kill the officers, and (4) was not standing on his porch shouting at the police at the time of the entry, or even communicating with the police at all.
The majority posits, however, that the presence of the neighbors who refused to evacuate the surrounding area heightened the threat that Bing presented. This fact allegedly helps to distinguish O’Brien, because there the police had successfully evacuated the neighbors early on in that standoff. O’Brien, 23 F.3d at 993. But the majority’s reliance on the presence of unevacuated neighbors rewards the police for their failure to properly utilize their authority to force the evacuations of those who were presumably endangered by an allegedly dangerous gunman. I am concerned that this rationale will encourage the police to not protect bystanders in order to help justify a warrantless entry on the basis of exigent circumstances.
In the end, I find this case to be closer to O’Brien than to Hancock, and thus believe that there were no exigent circumstances justifying a warrantless entry into Bing’s home. I would therefore conclude that the officers violated Bing’s constitutional rights. On the other hand, I believe that they are entitled to qualified immunity because this case is not so close to O’Brien as to have put a reasonable officer on notice that his conduct was illegal. There is, for example, an admittedly large disparity between O’Brien and this ease in terms of the hours of delay prior to taking invasive action. Moreover, even if the officers failed in their duty to protect the public by not forcibly evacuating Bing’s neighbors, there were in fact bystanders in the area. The presence of the bystanders may have caused a reasonable officer to believe that the threat to the public was greater than that presented in O’Brien.
So even though I conclude that the officers were mistaken in their belief that exigent circumstances were present, they should be protected by qualified immunity. See Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (“The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.”); Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (“As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law.”). I thus reluctantly agree with the majority that the warrantless intrusions into Bing’s home do not in themselves provide a basis to hold the officers personally liable.