[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14710
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cv-01692-SCB-MAP

NATHAN DUANE HERBIG,

Plaintiff-Appellant,

versus

AARON KRETZER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 4, 2014)

Before TJOFLAT, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Nathan Duane Herbig, who was arrested on charges of lewd molestation that were ultimately dismissed, appeals the district court's dismissal of his 42 U.S.C. § 1983 complaint against Aaron Kretzer, a detective with the Polk County Sheriff's Office.  In Herbig's complaint, he claimed that Kretzer intentionally or recklessly misrepresented or omitted material facts in the affidavit underlying his application for a warrant to arrest Herbig which, if properly considered, would have undermined the probable cause finding.  The district court concluded that Kretzer was entitled to qualified immunity from the suit because the facts alleged in Herbig's complaint, even if true, could not establish that Kretzer violated clearly established law.  After careful review, we affirm.

I.

We review de novo a district court's decision to dismiss a § 1983 claim on qualified immunity grounds, resolving all issues of material fact in favor of the plaintiff and then asking whether the defendant is entitled to qualified immunity as a matter of law under the plaintiff's version of the facts.[1]  Case v. Eslinger, 555 F.3d 1317, 1324–25 (11th Cir. 2009).

---

[1] For this reason, we take as true all facts alleged in Herbig's complaint and construe them in the light most favorable his claim.  Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010). We also consider the affidavit underlying the arrest warrant only to the extent Herbig's complaint does not challenge its contents, because the affidavit was referenced throughout the complaint and subsequently filed by both Herbig and Kretzer.  See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it.").

"Section 1983 affords relief for individuals who have been deprived of a constitutional right by an individual who was acting under color of state law." Lowe v. Aldridge, 958 F.2d 1565, 1569 (11th Cir. 1992).  This seemingly broad protection notwithstanding, the defense of qualified immunity eliminates the relief otherwise available under § 1983 in many cases.  This Court follows a two-step analysis when deciding whether a government official is entitled to qualified immunity from suit.  First, the official must "prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Id. at 1570.  Herbig does not dispute that Kretzer was engaged in a discretionary function when he pursued the warrant for Herbig's arrest.  Whether Kretzer is entitled to qualified immunity therefore turns on the second stage of the inquiry.

In the second step, "the burden shifts to the plaintiff to show lack of good faith on the defendant's part," a burden that is met by proof demonstrating that the defendant's conduct "violated clearly established constitutional law." Id. (quotation marks omitted).  The plaintiff meets this burden by establishing (1) that the facts, taken in the light most favorable to the plaintiff, demonstrate that the official's conduct violated the plaintiff's constitutional rights, and (2) that the right allegedly violated was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001).  If the answer to either question is no, then the defendant is protected by qualified immunity and we must affirm the district court's dismissal

3

of the claim on that basis.  See Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009).

For a right to be clearly established and defeat an official's claim to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987).  Of course, this is not to say that official action is protected by qualified immunity unless the precise action in question has previously been held unlawful. Id.  "[B]ut it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id.  This reasonableness inquiry is an objective one, and therefore does not take into account the officers' subjective intent or beliefs. Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990).

"Indubitably, an arrest without probable cause violates the Fourth Amendment and establishes a cause of action under section 1983." Lowe, 958 F.2d at 1570.  We have clarified, however, that officers are entitled to qualified immunity even if they did not have probable cause to arrest so long as they had arguable probable cause, which exists if "reasonable officers in the same circumstances and possessing the same knowledge . . . could have believed that probable cause existed." Id. (quoting Von Stein, 904 F.2d at 579); see also Malley v. Briggs, 475 U.S. 335, 344–45, 106 S. Ct. 1092, 1098 (1986) ("Only where the

4

warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." (citation omitted)).  In other words, actual probable cause—which is, at its heart, a "reasonable ground for belief of guilt" based on the totality of the circumstances, Maryland v. Pringle, 540 U.S. 366, 371, 124 S. Ct. 795, 800 (2003) (quotation mark omitted)—is not necessary for an arrest to be objectively reasonable.  Lowe, 958 F.2d at 1570.  This analysis requires us to affirm the district court's determination that qualified immunity shields Kretzer from suit if "any reasonable officer would have sought" an arrest warrant based on the information Kretzer had.  Id.  This standard is a forgiving one for officers.  As the Supreme Court has said, "it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  Malley, 475 U.S. at 341, 106 S. Ct. at 1096.

## II.

Applying this legal framework, the district court concluded that Herbig had not met his burden to demonstrate that the right allegedly violated was clearly established because "[e]ven if all of the allegedly omitted information was incorporated into his affidavit, Kretzer could still reasonably conclude that probable cause existed to believe that Herbig had sexually abused the girls."  We agree.  The affirmative representations in the affidavit—much of which Herbig did

5

not challenge in his complaint—paint a troubling picture suggestive of sexual abuse.

Kretzer began his investigation by interviewing the victims' mother. Kretzer notes in the affidavit underlying the warrant application that the mother and Herbig were divorced, that the mother had custody of the victims, and that Herbig only had visitation rights one weekend out of every month. The mother told Kretzer that the victims began exhibiting unusual behavior after visiting Herbig in Summer 2009 and making troubling statements suggesting that Herbig sexually abused them and took nude photographs of them. The mother also told Kretzer that the victims' pre-school teacher and school director heard one of the victims make statements indicating that her father sexually abused her. Kretzer conducted follow up interviews with the victims' teacher, school director, step-father, and grandmother, who all provided statements corroborating much of the information supplied by the victims' mother.

Kretzer also reviewed two videotaped forensic interviews with the victims conducted by two Child Protective Service Investigators on December 17 and December 21, 2009. The affidavit, however, only includes information from the December 21 interviews. In the affidavit, Kretzer candidly revealed that the victims were "unable to distinguish the difference between a truth and a lie" and that there was no agreement made to speak only about the truth during the

6

interview.  During the interviews, both victims said that their father touched them inappropriately, aided in their description by forensic dolls.  The description of the recorded interview is the only affirmative content in the affidavit Herbig challenges, claiming that the affidavit "exaggerated" the victims' actions and statements during the interviews.  Even so, Herbig acknowledges that in both interviews the victims "exhibited some inappropriate behavior with the forensic dolls supplied [to] them."

Herbig complains that this information misrepresents and omits material facts which, if considered, would have caused Kretzer's warrant application to be rejected.  Herbig claims that the affidavit was deficient in the following ways: (1) it did not adequately explain "the historical and bitter custody/divorce relationship between [Herbig] and his ex-wife that would have substantially affected the reliability and credibility of the ex-wife's allegations of child sexual abuse;" (2) it did not include any information about the December 17 forensic interview, in which the victims denied any sexual abuse; (3) it "exaggerated" the victims' actions and statements in the December 21 interview, although Herbig does not explain in what way the affidavit misrepresented the recording; (4) it did not include the mother's additional allegation during the course of the investigation that Herbig also abused his girlfriend's eight-year-old daughter, allegations which

7

had been denied by that child; and (5) it did not reflect the fact that a search of Herbig's home failed to yield any evidence of sexual abuse.

We do not doubt that a contentious divorce and custody battle may call into question allegations made by one former spouse against the other. But the fact that Kretzer's affidavit did not explain the "historical and bitter" nature of the divorce and custody battles does not have much impact on the arguable probable cause analysis. We say this because not only did Kretzer actually include information in the affidavit indicating that the primary accuser was Herbig's ex-spouse and that Herbig had very limited visitation rights, but Kretzer also independently investigated and corroborated the mother's allegations. United States v. Gonzalez, 969 F.2d 999, 1003 (11th Cir. 1992) (noting that, in the probable cause analysis, "corroboration of the details of an informant's tip by independent police work is of significant value"). Kretzer's interviews with the victims' grandmother, step-father, pre-school teacher, and school director, as well as his review of the December 21 forensic interviews, all corroborated the mother's descriptions of the victims' behavior and statements. Given the detailed allegations and the independent corroboration, the fact that the divorce and custody battles were "bitter" does not make Kretzer's decision to pursue an arrest warrant objectively unreasonable. Cf. Lowe, 958 F.2d at 1571 (concluding, in an analogous § 1983 case where a warrant issued based in large part on accusations of sexual abuse

8

lodged by one ex-spouse against another, that "the fact that the [two] were enmeshed in a bitter divorce and custody battle . . . carries little weight in the analysis" in part because "allegations of abuse leveled during divorce cannot be ignored merely because they are brought up in the heat of battle").

Herbig's challenge to the accuracy of Kretzer's description of the December 21 interview in the affidavit does not change our conclusion that it corroborates the mother's allegations. Herbig's complaint claims that Kretzer "exaggerated" the victims' statements and behavior during the interview but does not sufficiently explain how and to what extent Kretzer's description deviates from reality. In that sense, Herbig's allegation is merely conclusory. Cf. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (describing the pleading standards and noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to give an allegation "facial plausibility"). But even assuming that Kretzer did exaggerate the improprieties implied in the recorded interview, Herbig nevertheless acknowledges that the interview suggests that Herbig engaged in "inappropriate behavior" towards the victims. This suggestion goes a long way towards establishing arguable probable cause.

The remaining omissions Herbig identifies in his complaint do not render Kretzer's belief that there was probable cause objectively unreasonable. That the

9

victims initially denied the sexual abuse allegations comes as no surprise, nor does the fact that there was no physical evidence of the abuse found during the search of Herbig's home.[2] See Lowe, 958 F.2d at 1571 ("The children's initial denial that any [sexual] abuse occurred is not unusual, nor is the fact that the physical evidence was not dramatic. Thus, the children's early reticence does not militate against a conclusion that the state officials acted with probable cause." (footnote omitted)). And the fact that the mother accused Herbig of abusing another minor victim who denied the allegation does not undermine the reasonableness of Kretzer's determination that he had probable cause to believe Herbig sexually abused his own daughters. Although it may to some extent undermine the mother's credibility, the evidence corroborating the mother's allegations that her own daughters were abused lends support to the reasonableness of Kretzer's probable cause determination even though the mother's other accusation was unsubstantiated.

In short, even considering the deficiencies in Kretzer's investigation which are pointed out in Herbig's § 1983 complaint, there was evidence from which a reasonable officer could believe there was probable cause to arrest Herbig for

---

[2] To be sure, one might reasonably expect that some evidence of the alleged abuse—for example, the nude photographs—would have been found. But a reasonable expectation that evidence might be found does not equate to an expectation that if none is found, then there is no reason to believe that any abuse ever occurred. This is particularly so in cases like this one, with evidence from a number of sources suggesting sexual abuse.

10

sexually abusing his daughters.  As a result, Kretzer is protected from suit by qualified immunity, and the district court properly dismissed Herbig's complaint.

**AFFIRMED.**