GRITZNER, District Judge,
dissenting.
Because I hold the view that the warrant was clearly overbroad, and the District Court properly declined to recognize the protection of qualified immunity, I respectfully dissent. I would find the warrant that Spurlock executed was so obviously overbroad in relation to the criminal act at issue that any reasonable officer would have known there was no probable cause for the scope of the warrant. See Malley v. Briggs, 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Put simply, no reasonable officer could conclude that a search and seizure of digital storage devices, firearms, or monies would bear any plausible connection to a misdemeanor regulatory infraction of housing a deer as a pet. As it stands, the majority opinion could potentially permit overbroad, and thus unconstitutional, warrants- so long as some portion of the warrant is supported by probable cause, substantially weakening the Fourth Amendment’s protections against general searches.
The Fourth Amendment requires that “no Warrants shall issue, but upon probable cause ... and particularly describing the ... things to be seized,” U.S. Const, amend. IV. This requirement is necessary to prevent “unauthorized invasions of the sanctity of a man’s home and privacies of life.” Berger v. New York, 388 U.S. 41, 58, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) (citation and internal quotation marks omitted). The Fourth Amendment’s particularity requirement commands that an overbroad warrant is not saved if probable cause is lacking for only some, but not all, of the items to be searched. A warrant must be wholly based on probable cause. This is because the Fourth Amendment “limit[s] the authorization to search to the specific areas and things for which there is probable cause to search.” Maryland v. Garrison, *538 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987) (emphasis added); see also Groh v. Ramirez, 540 U.S. 551, 560, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (“[U]nless the particular items described in the affidavit are ... set forth in the warrant itself ..., there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit.” (emphasis added)). In this case, there is no basis to conclude that firearms, monies, or “other instrumentalities ... of criminal activity” would aid prosecution of a crime that consists in the mere possession of a deer as a pet.[8] Because this much would be obvious to any reasonable police officer, qualified immunity must be denied under Messerschmidt v. Millender, 565 U.S. 535, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012).
The Supreme Court’s decision in Messerschmidt demonstrates that the facts in the affidavit must include indicia of probable cause for each item in a warrant and also diverges substantially from the facts of this case. As the majority notes, the warrant at issue in Messerschmidt concerned a known gang member who had attempted to murder his estranged girlfriend after she had “call[ed] the cops” on him. Messerschmidt, 565 U.S. at 548, 132 S.Ct. 1235 (alteration in original). In addition to authorizing a search for the weapon used to commit the crime, the warrant authorized a search for all firearms as well as for indicia of the suspect’s gang membership. Id. at 541-42, 132 S.Ct. 1235. The Supreme Court in Messerschmidt, assuming that the inclusion of such items rendered the warrant overbroad, determined that there was arguably probable cause as to those items because, inter alia, the suspect could use other firearms to make a repeat attempt on the woman’s life and that there was arguably probable cause as to the indicia of gang membership because, inter alia, the suspect’s gang membership could have been relevant to establish a motive for the attempted murder. Id. at 550-51, 132 S.Ct. 1235. The ultimate question was whether “the facts set out in the affidavit established a fair probability that such evidence would aid the prosecution of [the suspect] for the criminal acts at issue,” which the Supreme Court deemed satisfied for the items listed in the warrant. Id. at 553, 132 S.Ct. 1235.
The facts set forth in Spurlock’s affidavit and some of the items set forth in the warrant lack a similar logical connection, and the majority opinion does not provide one; nor could that be successfully done on this record.[9] If there is no plausible corn- *539 nection between the crime at issue and items described in the warrant, there is no means of finding arguable probable cause as to those items. See M (determining “it would not have been ‘entirely unreasonable’ for an officer to believe that the facts set out in the affidavit established a fair probability that such evidence would aid the prosecution of [the suspect] for the criminal acts at issue”) (quoting Malley, 475 U.S. at 341, 106 S.Ct. 1092). Contrary to the majority’s conclusion, a situation in which there is no reasonable basis to find probable cause as to the warrant’s breadth is precisely the situation in which the issuing judge “so obviously erred that any reasonable officer would have recognized the error.” Messerschmidt, 565 U.S. at 556, 132 S.Ct. 1235.

. Neither the majority opinion nor the district court's order detail the Arkansas Regulations' upon which the affidavit was based and the warrant was issued. First, as appellant lists, is Code Ark. R. 002.00.1-09.01, which provides that "[i]t is unlawful to possess, hold captive, confine or enclose any live wildlife, whether native or non-native; migratory or imported, unless otherwise specified herein.” The second regulation is Code Ark. R. 002.00.1-09.14, which, with certain exceptions, prohibits keeping a deer as a pet, requires certain housing enclosures for lawfully kept deer, and prohibits keeping such deer in dangerous or unhealthy conditions. Even a generous reading of those regulations does not support the seizure of the following items enumerated as “(5)” and ”(6)” of the warrant: “(5) computers, digital and/or electronic storage devices, and any digital and/or electronic removable media, tending to demonstrate that criminal offenses have been committed (6) and all other instrumentalities including firearms and monies of criminal activity.”

. Because Messerschmidt instructs that facts in the affidavit must provide objectively reasonable grounds to believe there is probable cause, it is necessary to review the link between the affidavit, the nature of the crimes at issue, and the scope of the search. See Messerschmidt, 565 U.S. at 551-53, 132 S.Ct. 1235. First, the factual basis of the warrant application in Messerschmidt was provided from an interview with the victim, which, in *539 turn, was recounted in the warrant application and affidavit. Id. at 548-49, 132 S.Ct. 1235. These facts disclosed the suspect’s prior use of guns and gang affiliation. Id. Here, the warrant application was based upon information that the Rieslings possessed a deer. There was no indication the Rieslings were engaged in criminal activity related to, or beyond, possession of a deer. Second, the detectives in Messerschmidt verified the victim’s account of the suspect’s related criminal activity and sought the approval of a superior and a deputy district attorney before submitting the warrant application. Id. at 553, 132 S.Ct. 1235. There is no indication Spurlock verified the facts in the affidavit or sought approval of the warrant application. Third, the items in the Messerschmidt warrant were anticipated by the warrant application and affidavit. Id. That is not the case, here. Although Spurlock’s affidavit asserted probable cause to search for “ledgers documenting the capture or sale of wildlife,” this was not a fact set out in the affidavit but was itself an inference of probable cause from the facts. Items five and six of the warrant are not anticipated by facts set out in the affidavit.
Moreover, the majority’s rationale that it was not " 'entirely unreasonable' for Spurlock to conclude that suspects keeping a live deer in their home also may be engaging in wildlife trafficking,” ante, at 536, in my view exceeds the court’s role in the qualified immunity analysis. Spurlock did not mention in the application or the affidavit that he had reason to suspect the Rieslings were involved in wildlife trafficking. Allowing this inference, the majority fills gaps in this record citing Messerschmidt's “more lenient” standard. I do not read Messerschmidt as going that far. Indeed, Messerschmidt goes to great lengths to detail the detectives' conduct that supported a finding that their reliance on the warrant was not entirely unreasonable. Messerschmidt was a case driven by factual support in the record, and I conclude it cannot be read to support Spurlock's reliance on the warrant in this case.